BEFORE THE SECOND DIVISION, SEPTEMBER 27, 1962.

No. 67085.—The A. W. Fenton Co., Inc. *v.* United States, protest 58/118 (Cleveland),

FORD, Judge: This case brings before the court for consideration the proper classification of three articles described on the invoices as a beat frequency oscillator, type 1014; a high speed level recorder, item No. 2304; and a db potentiometer, item No. 2347, which is a standard part of the recorder. All of these items were classified by the collector of customs as laboratory apparatus under the provisions of paragraph 360 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as made effective by T.D. 52820, which provides as follows:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments, but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other * * * _____ 30% ad val.

Plaintiff contends the imported articles are not laboratory instruments or apparatus and, therefore, are properly classifiable under the provisions of paragraph 353 of the Tariff Act of 1930, as modified, *infra.* It is claimed that the beat frequency oscillator, item 1014, is properly dutiable at the rate of 15 per centum ad valorem under said paragraph 353, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and the recorder and potentiometer are properly dutiable at the rate of 13¾ per centum ad valorem under said paragraph 353, as modified by said Torquay protocol, *supra.* The provisions of this paragraph are as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other * * * _____ 13¾% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 51802, *supra:*

Articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs; all the foregoing (not including electrical wiring apparatus, instruments, and devices), finished or unfinished, wholly or in chief value of metal, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other articles * * * _____ 15% ad val.

It is alternatively contended that if the court does not find the merchandise to be properly classifiable, as claimed, *supra,* in that event, plaintiff then urges that the merchandise is dutiable at the rate of 20 per centum ad valorem under either paragraph 353 or 360 of the Tariff Act of 1930, as modified by the trade agreement with Switzerland, 69 Treas. Dec. 74, T.D. 48093, as made effective by T.D. 48314, the provisions of which are as follows:

Paragraph 353:

Testing machines for determining the strength of materials or articles in tension, compression, torsion, or shear, having as an essential feature an electrical element or device, and parts thereof; any of the foregoing, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 20% ad val.

Paragraph 360:

Laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear, and parts of the foregoing; any of the foregoing wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for_____ 20% ad val.

The record in this case consists of the testimony of one James W. Day, Jr., called on behalf of plaintiff, and a pamphlet issued by his company, received as plaintiff's illustrative exhibit 1. Mr. Day testified that, at the time of importation, he was product line supervisor for Brush Electronics Co., the actual importer of the merchandise herein; that his duties were to market the Bruel & Kjaer instrument line; that he is familiar with the three items involved herein; that the oscillator and recorder are normally used together as a combination to provide a commercial means for measuring the ability of electrical or acoustical devices to respond to audio frequencies; that, in addition to the foregoing, the military of the United States uses this company's products to determine that the products it has purchased conform to the specifications under which they were ordered. Based upon his personal knowledge, Mr. Day testified that the Navy tests motors purchased for use in submarines to determine whether the motors, fans, pumps, and other operating equipment conform to the rather stringent requirements with respect to noise tolerance set by the Navy; that Motorola uses the company's equipment to inspect both the speakers and microphones incorporated in their mobile radio units, using the combination oscillator and recorder for this purpose; that a rather prominent use of this equipment is for measuring the echo effect in public auditoriums, broadcast studios, concert halls, or wherever the intelligibility of the voice is important; that the instruments are also used to measure the natural frequency of the vibration of mechanical items, such as turbine blades, in order to determine if, at a certain speed, vibration is at a response which would cause the turbine blade or airframe to destroy itself; that the involved articles become a factor of considerable importance to commercial industry where products, such as air conditioners, fans, heaters, washing machines, vacuum cleaners, automobiles, or anything which has the ability to produce annoyance on the part of the user are concerned; that Carrier Air Conditioning Co., Ford Motor Co., Chevrolet Motor Co., and Chrysler Motor Co. use the equipment rather extensively for the measurement of noise; that personnel to operate the equipment need no more than 2 or 3 weeks of instruction; that possibly 3 per centum to 7 per centum of the products are used by colleges, but that the majority are used for commercially practical applications involving distinctly utilitarian uses.

The witness then testified that the oscillator is an article which produces, rectifies, controls, or distributes electrical energy and specifically "the oscillator takes the power frequency, converts it into a variable frequency signal, whose voltage amplitude can be controlled, and this is the signal used for testing purposes"; that the recorders do not function to produce, rectify, control, or distribute electrical energy, but they have as an essential feature an electrical element; that the recorder is basically an electrically operated instru-

ment whereby an electrical signal can be compared against a reference, and by known balance means, the difference between two signals is plotted.

On cross-examination, Mr. Day testified that, in his opinion, there is a distinction between laboratory type testing and production testing; that the latter is utilized to actually test a completed product to determine if the actual performance according to the manufacturer's specifications is accurate, while laboratory type testing is for experiment and study.

Counsel for plaintiff conceded and agreed that the articles are in chief value of metal, as classified by the collector of customs, and that all claims for merchandise other than the three items set forth above are abandoned.

Since the merchandise was classified as laboratory apparatus under the provisions of paragraph 360, *supra*, and one of the alternative claims is under said paragraph, *supra*, decision herein may well be facilitated if we first consider whether the involved articles are laboratory instruments within the purview of paragraph 360, *supra*.

Our appellate court, in the case of *R. J. Saunders & Co., Inc.* v. *United States*, 45 C.C.P.A. (Customs) 87, C.A.D. 678, defined the term laboratory instruments as implying use of an instrument for laboratory purposes. The question that presents itself is, therefore, what is the purpose of the imported articles?

The record substantiates the fact that the majority, 93 per centum to 97 per centum of the instruments, are utilized by companies or the Government for practical purposes of determining whether articles purchased comply with their required specifications or whether completed articles manufactured or assembled by them comply with their own specifications. The witness was of the opinion that laboratory testing and production testing differed. His opinion, in which we agree, was that laboratory testing is for experiment or study. The use, herein, is not for experiment or study and, therefore, can hardly be said to be a laboratory use. The record also establishes that said articles are not used in laboratories.

Therefore, the classification as laboratory instruments under paragraph 360 is erroneous, as would be the claimed rate of 20 per centum ad valorem under said paragraph.

The other alternative claim that said merchandise is properly dutiable at 20 per centum ad valorem under the provisions of paragraph 353, *supra*, as machines to test the strength of materials, etc., will next be considered.

An examination of Webster's New International Dictionary, second edition, unabridged, 1949, reveals the following definitions for the terms utilized in paragraph 353 for testing machines for determining the strength of material or articles for tension, compression, torsion, or shear:

tension, * * * 6. *Mech.* A force (either of two balancing forces) causing, or tending to cause, extension. It is measured usually per unit area of cross section;—the converse of *pressure*.

compression, * * * 5. *Mech.* The total deformation, or the deformation per unit of length, of a substance, produced by a compressing force.

torsion, * * * 4. *Mech.* The internal moment or couple of restitution which arises in a thread, wire, or rod, when it is twisted.

shear, * * * 7. *Mech.* a Internal force tangential to the section on which it acts; shearing force. b Transverse force or total shear in a cross section of a beam, column, or arch; the resultant shearing force in the cross section, which is equivalent to vertical shear if the beam is horizontal. c An action or stress, resulting from applied forces, which causes or tends to cause two contiguous parts of a body to slide relatively to each other in a direction parallel to their plane of contact;—called also *shearing stress, tangential stress,*

In view of the foregoing, it is apparent that the involved merchandise, which is utilized to provide a commercial means for measuring the ability of electrical or acoustical devices to respond to audio frequencies, does not fall within any of the definitions set forth above. Accordingly, the claim thereunder is untenable.

The record establishes without contradiction that the oscillator involved herein does produce, modify, rectify, control, or distribute electrical energy. Accordingly, the oscillator, item 1014, is, in our opinion, properly dutiable at the rate of 15 per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiff herein. The record also establishes that the level recorder and potentiometer of which it is a part, items 2304 and 2347, respectively, although they do not produce, modify, rectify, control, or distribute electrical energy, do have as an essential feature an electrical element or device and are, therefore, in our opinion, properly dutiable at the rate of 13¾ per centum ad valorem under said paragraph 353 of the Tariff Act of 1930, as modified, *supra*, as claimed by plaintiff herein.

To the extent indicated, the specified claims in the above suit are sustained; in all other respects and as to all other merchandise, all the claims are overruled.

Judgment will be rendered accordingly.