(C.D. 2589)

WESTINGHOUSE ELECTRIC CORPORATION v. UNITED STATES

United States Customs Court, Second Division

(Decided November 24, 1965)

*Jerome G. Clifford* (*George W. Israel* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Henry J. O'Neill* and *Richard J. Kaplan,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Presented for the court's determination is the proper classification for customs duty purposes of two high vacuum melting and casting furnaces, designated as VSG–10 and VSG–25, respectively, and certain parts therefor, which were imported from Switzerland and are covered by the above-enumerated protests.

The merchandise was classified as laboratory instruments and metal parts thereof in paragraph 360 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and was assessed with duty at the rate of 30 per centum ad valorem.

Plaintiff claims the merchandise is properly dutiable under the provision of either paragraph 353 of the Tariff Act of 1930, as modified, at 12½ per centum ad valorem or at 13¾ per centum ad valorem; or under paragraph 372 of the Tariff Act of 1930, as modified, at 13¾ per centum ad valorem; or under paragraph 397 of said act, as modified, at 22½ per centum ad valorem.

The pertinent texts of the statutes involved are as follows:

Paragraph 360 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

> Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments, but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:
>
> > Slide rules wholly or in chief value of synthetic resins_____     * * *
> >
> > Other (except laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear; moisture testers; pyrometers; and parts of any of the foregoing)_____ 30% ad val.

Paragraph 353 of the Tariff Act of 1930, are modified, *supra:*

> Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
>
> >   *      *      *      *      *      *      *
> >
> > Electric motors, furnaces, heaters, and ovens_____ 12½% ad val.
> >
> >   *      *      *      *      *      *      *
> >
> > Other * * * _____ 13¾% ad val.
>
> Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof)_____ The same rate of duty as the articles of which they are parts

Paragraph 372 of the Tariff Act of 1930, as modified, *supra:*

> Machines, finished or unfinished, not specially provided for:
>
> > Calculating machines specially constructed for multiplying and dividing_____     * * *
> >
> >   *      *      *      *      *      *      *

Other * * * _____ 13¾% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802:

Articles of wares not specially provided for, whether partly or wholly manufactured:

   *        *        *        *        *        *        *

   Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal * * *:

      Woven wire fencing * * *.

   *        *        *        *        *        *        *

      Other * * * _____ 22½% ad val.

Received in evidence were defendant's exhibit A, a photograph of the larger of the two furnaces, namely, the VSG–25, defendant's collective exhibit B, a document containing the specifications for the VSG–10, and defendant's exhibit D, a pictorial representation of the VSG–10. The testimony adduced was relevant to the question whether the articles at bar are laboratory instruments, or items having as an essential feature an electrical element or device.

Except for their size, the two furnaces are identical. The testimony indicates that the VSG–25 is a larger version of the VSG–10. Plaintiff's witness, Cunningham, who is the laboratory supervisor in plaintiff's metallurgy department, testified as to the operation and construction of the furnace. He indicated that the melting process carried on within the vacuum furnace was brought about by a high frequency alternating current. The current is "piped into" the furnace through what was referred to by the witness as "suitable leads," then into a copper coil that surrounds a crucible used to hold the metal to be melted. The coil runs to the outside of the furnace through a vacuum seal. The interior of the furnace has been so designed so as to permit proper positioning of a mold in relation to the coil and crucible. This facilitates pouring of the molten alloy into the mold, while the metal is still within the furnace, by means of a lever outside the unit.

Wenny, defendant's witness, who is employed by Bell Telephone Laboratories in its metallurgical research laboratory, testified that the VSG–10 which his laboratory uses is properly termed a furnace. That unit is identical to the VSG–10 being considered at bar.

Mueller, who is a supervisor in plaintiff's atom fuel department, in referring to the imported devices, likewise made use of the term "furnace." Mueller referred to the melting units as "high vacuum melting and casting furnace[s]."

The process of transmitting power from the outside source of electricity to the work piece is electro-magnetic induction. The initial

current induces a magnetic field which, in turn, creates a current in the metal to be heated. The electrical element, that is, the parallel wound induction coil, is itself the furnace's heating device. Mueller testified that the coil is an essential feature of the furnace, an integral part of the unit, and is permanently attached thereto.

Mueller stated that plaintiff's VSG–25 was located at plaintiff's research laboratory, while the smaller unit was not similarly situated, but was at the Magnetic Materials Development Laboratory.

Plaintiff's witness, Smith, who is the vice president in charge of research and engineering for the Wilbur B. Driver Co., testified that his firm has a VSG–25 unit located in its laboratory. It is identical to the unit involved in the case at bar.

A fair conclusion to be drawn from the testimonial record is that the purpose for which the VSG–10 and VSG–25 vacuum furnaces are used is to manufacture an alloy of a higher degree of purity than would be obtainable by other means. ·

Two methods of melting metals are referred to by the witnesses herein—the conventional air-melting units and the vacuum-melting devices, two of which latter are here involved. It was explained that with the use of the instant high vacuum melting furnaces (as with all such furnaces) gases which may exist in the metals to be melted are removed and contamination from the atmosphere is avoided. The resultant product is a pure metallic alloy which becomes, for the most part, an article of commerce with a variety of special uses, such as a joining alloy in the manufacture of semi-conductor products, according to plaintiff's witness, Cunningham, or for the production of hair springs for fine watches, according to the testimony of plaintiff's witness, Clark, and defendant's witness, Wenny.

The record discloses that 50 percent of the total vacuum furnace output of the plaintiff corporation is produced to fill Government contracts, 10 to 15 percent is sold to various divisions of the corporation and to other customers, and the remainder "is made for the laboratory people."

The Government contends paragraph 360 is determinative of the classification of the two furnaces and parts thereof, and that the articles are laboratory instruments within that provision. Defendant also maintains that since the laboratory is the area in which the furnaces are chiefly used, that fact is conclusive as to the classification of the articles as laboratory instruments. *Arthur H. Thomas Co.* v. *United States*, 72 Treas. Dec. 203, T.D. 49102.

The term "laboratory instruments" has been judicially construed as implying "use for laboratory purposes." *United States* v. *Adlanco Industrial Products Corp.*, 21 CCPA 249, T.D. 46778; *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678. And, in the

case of *A. W. Fenton Co., Inc.* v. *United States*, 49 Cust. Ct. 242, Abstract 67085, this court indicated that "laboratory purposes" referred to use for experiment or study.

Inasmuch as the record before us discloses that the VSG–10 and VSG–25 high vacuum melting and casting furnaces at bar are used for commercial purposes, to wit, the production of ingots of pure metal alloys, said furnaces are not, in our opinion, laboratory instruments in paragraph 360 of the Tariff Act of 1930, as modified, *supra*, as classified by the collector of customs. The fact that some of said furnaces may be located in "laboratories" does not deter us from this conclusion, in the light of the *Saunders* case, *supra*, which states, in effect, that place of use does not control the classification of such devices but rather the purpose to which they are put. Since it has been established that the imported devices produce a merchantable product, the further fact that some of said product is used for purposes of experiment or study does not make of the apparatus which produces it a laboratory instrument.

The testimony further establishes that the electrical device contained within the furnaces is necessary to the processes carried on therein, and that the coil and the remainder of the article are so designed as to be considered integrated and inseparable, insofar as proper and efficient operation of the furnaces are concerned. On this phase of the case, it may be noted that defendant, in its brief, states that it "does not dispute the fact that the furnaces in issue have as an essential feature an electrical element or device."

We conclude, therefore, that the furnaces at bar, and parts thereof, are articles having as an essential feature an electrical element or device, and parts thereof, within the intendment of paragraph 353 of the tariff act, as modified, *supra*, and being *eo nomine* provided for therein as electric furnaces, and parts thereof, are subject to duty at the rate of 12½ per centum ad valorem, as claimed by plaintiff. That claim in the protests is, therefore, sustained. All other claims are overruled.

Judgment will be entered accordingly.