**THORNLEY & PITT MISCO, INC.,**
Plaintiffs,

v.

**UNITED STATES, Defendant.**

**C. D. 2926; Protest No. 63/93–96914.**

United States Customs Court
Second Division.
March 20, 1967.

Glad & Tuttle, San Francisco, Cal., (George R. Tuttle, Jr., San Francisco, Cal., of counsel) for plaintiffs.

Barefoot Sanders, Asst. Atty. Gen., (Charles P. Deem and Alfred A. Taylor, Jr., New York City, trial attys.), for defendant.

Before RAO, Chief Judge, and FORD, Judge.

RAO, Chief Judge:

The merchandise which forms the subject of the above-enumerated protest, described on the commercial invoice as "ONE—No. 15 Instructional Pelton Wheel," was classified for customs duty purposes upon importation through the port of San Francisco as "Laboratory Apparatus, other," in paragraph 360 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, and was subjected to duty at the rate of 25½ per centum ad valorem.

The original protest claim for duty at 15 per centum ad valorem in paragraph 353 of said act (the electrical articles provision) and one of the claims by amendment to the protest for entry free of duty pursuant to paragraph 1720 of said act (covering models of inventions) were not pursued and were subsequently abandoned.

The only remaining claim of plaintiffs is for classification of the importation "at 15% ad valorem under Paragraph 372, as modified," whether as a part of a machine, not specially provided for, as stated at the trial of this case, or as being in itself a machine, not specially provided for, as urged in plaintiffs' brief, is left open for conjecture. It is noted also that, whereas the rate of duty claimed in the protest and referred to at the time of hearing was 15 per centum ad valorem, the rate applicable to the provision of paragraph 372 relied upon was 11½ per centum ad valorem at the time of the instant importation, by virtue of the Sixth Protocol to the General Agreement on Tariffs and Trade, supra.

The infirmities or irregularities referred to, however, do not invalidate the protest, and we shall proceed to a consid-

eration of the case on the merits. General Electric Co. v. United States, 7 Ct.Cust. Appls. 157, T.D. 36464; Carson M. Simon & Co. v. United States, 55 Cust.Ct. 103, C.D. 2558.

The statutory provisions in competition are as follows:

Paragraph 360 of the Tariff Act of 1930, as modified by the sixth protocol, supra:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

Slide rules * * *

Other * * * ...........................25½% ad val.

———◆———

Paragraph 372 of said tariff act, as modified by the sixth protocol, supra:

Machines, finished or unfinished, not specially provided for:

Adding machines * * *

* * * * * * * * * *

Other * * * ..........................11½% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part.

The rate for the article of which they are parts.

———◆———

The record upon which this case has been submitted for the court's determination consists of the testimony of one witness called on behalf of plaintiffs and two exhibits. Plaintiffs' exhibit 1 is a picture of an instructional Pelton wheel and is representative of the imported article. Plaintiffs' exhibit 2 is a brochure entitled "GILKES PELTON WHEELS" put out by Gilbert Gilkes & Gordon, Ltd., of Kendal, England, which illustrates and describes Pelton wheels of a much larger size used in commercial applications.

Plaintiffs' witness, Allister MacKinnon, at the time of the hearing of this case, was president of Misco, Inc., ultimate consignee of the importation, and had been associated with the company for some 15 or 20 years. In addition to selling Pelton wheels similar to those in issue for instructional purposes to colleges and universities, his company has been engaged for the past 15 years in building electric generating powerhouses on the west coast in which they incorporate commercial Pelton wheels of much greater dimensions, by means of which electricity is generated from water power for industrial and domestic uses.

The witness explained that the Pelton wheel derives its name from a French inventor who lived about 150 years ago and who devised such a wheel to take power out of water.

MacKinnon described a Pelton wheel as "an impulse type wheel," with cups around the rim in a single or double row. As water impinges upon these cups, the wheel is turned, revolving a shaft from which power is taken off either directly or by belt.

352

MacKinnon testified to his familiarity with the instructional Pelton wheel depicted in plaintiffs' exhibit 1 which he described as about the same size as the one imported, to wit, "No. 15" which means that it is a 15-inch wheel, the weight of which would be about 600 pounds. Apart from size, it can be distinguished from the commercial type wheel by the fact that it has plexiglass on one end of the wheel housing to permit a viewing of what happens when water strikes the wheel. Another distinguishing feature is that the instructional Pelton wheels employ a pump, usually powered by electricity but possible of operation by steam or other power means, to provide pressure and to recirculate the water whereas the commercial Pelton wheels do not employ such a pump but rely on the head of water.

The commercial units are identical to the laboratory-type units, except that the latter are small and the power they develop is not commercially usable. The information which may be derived from a laboratory unit, however, is accurate and may be transposed and used for a commercial unit.

MacKinnon testified on direct examination that he has been selling the instructional Pelton wheels for about 4 years; that sales were exclusively to colleges and universities; and that they were used for teaching only and not for research. When asked what year students would be shown an instructional Pelton wheel in operation, the witness replied:

I think an undergraduate student about the third year. They are used generally to prove what they have learned in theory. They have been taught mathematical formulae, and so forth. And then they turn around and prove the formula in practical application by using these machines.

On cross-examination, the witness stated his sales of the instructional Pelton wheel to colleges and universities were mostly in California "although we have sold some on the East Coast." In addition to the sale of the instructional Pelton

wheel to the Sacramento State College, Sacramento, Calif., he had sold similar wheels to the University of Southern California, to San Jose State, and added "I don't recall who the others were offhand." When asked to give a word picture of the Sacramento college installation and the laboratory in which it was installed, the witness stated:

It's a big, concrete room. It's quite wet. It has concrete troughs in it with different machines of this nature bolted down at one end of the concrete trough which, in a Taylor race, carry the water out of the machines.

While it is tempting in a case such as this for the court to substitute its own belief that an instrument of the kind imported, with a plexiglass face to facilitate viewing, when sold to educational institutions would probably be used for purposes of instruction, it is constrained not to do so in this instance when so many elements of proof are lacking.

It is settled law that the action of the collector of customs in classifying merchandise for customs duty purposes carries with it a presumption of correctness. When, as here, a protest against such action is filed, the protestant has the burden of proving not only that the classification was wrong, but also of proving the claimed classification to be correct. Applying this principle to the instant case, the court must presume the collector's classification to be correct, to wit, that the imported Pelton wheel consists of laboratory apparatus, which term has been judicially construed as meaning apparatus used for experiment or study, and that the plaintiffs on the other hand have the burden of proving that said apparatus does not consist of laboratory apparatus and is not chiefy used for experiment or study. United States v. E. B. Miller Associates, Inc., J. M. Rodgers Co., 43 CCPA 14, C.A.D. 603; R. J. Saunders & Co., Inc. v. United States, 45 CCPA 87, C.A.D. 678; The A. W. Fenton Co., Inc. v. United States, 49 Cust.Ct. 242, Abstract 67085.

The evidence before the court in this case, unfortunately, is indefinite and inconclusive, and the record is lacking in proof that the imported articles are chiefly used for purposes of instruction of students and not for experiment or study in the research field.

Apart from testimony to the effect that instructional Pelton wheels had been sold mostly in Càlifornia and some on the east coast, there is no mention or suggestion of the volume of such sales, specific reference being made only to three sales to colleges and universities in California. And even as to those few sales, the evidence of the actual use of said apparatus is lacking in definiteness, the testimony being to the effect that it was *thought* a third year undergraduate student *might* be shown such a Pelton wheel in operation in connection with his studies.

There is nothing in the qualifications of plaintiffs' witness to indicate that he ever belonged to the teaching profession and used similar Pelton wheels to instruct students nor is there any evidence to the effect that he ever saw students being taught by others with the use of such apparatus. In the face of such a state of the record, we cannot say that the presumption of correctness attaching to the collector's classification of the imported Pelton wheel as a laboratory apparatus has been overcome.

Furthermore, as pointed out, supra, it is not clear from the record before us whether it is plaintiffs' contention that the imported article is a machine in itself or is a part of a machine for tariff classification purposes. To come within the provisions of paragraph 372 for machines, other, or as parts thereof, it must be shown that the imported apparatus is not elsewhere specially provided for in the tariff act.

There is testimony in the instant case to the effect that a pump used with the imported Pelton wheel to provide water at the proper "head" or pressure for the effective functioning of the device is operated electrically, but that steam or other sources of power could be used. There is no testimony to indicate whether this substitution of other power would entail a major or minor alteration of the imported mechanism, proof of which is necessary to enable the court to determine whether the imported Pelton wheel, in a tariff sense, possesses an essential electrical feature, which would bring it within the provisions of paragraph 353 of the tariff act and being thus specially provided for would be excluded from the purview of the claimed paragraph 372. United States v. Dryden Rubber Co., 22 CCPA 51, T.D. 47050.

The more consideration is given to the various features and characteristics of the imported device and the nature and extent of its use which are mentioned, suggested, or alluded to in the record before us but not clearly explained and substantiated, the less do we feel the plaintiffs have sustained their burden of proof. And as stated by the appellate court in the case of United States v. Malhame & Co., 19 CCPA 164, 171, T.D. 45276:

> The courts may not properly supply from imagination the essentials in which the proofs are deficient.

In the absence of clear, credible, and probative evidence to negate the collector's action and to substantiate the claimed classification, the court has no other course but to overrule all claims in the protest. We so hold.

Judgment will be entered accordingly.

FORD, J., concurs.