**SCHICK X-RAY CO., Inc.**
**v.**
**UNITED STATES.**
**C.D. 3689; Protest 60/27515-8826-60.**

United States Customs Court,
Second Division.
Feb. 4, 1969.

NEWMAN, Judge:

This case presents for the court's determination the proper tariff classification of merchandise described on the commercial invoice as "1 Elema cycle Ergometer No. 121 complete with accessories." The collector of customs assessed duty on the merchandise at the rate of 25½ per centum ad valorem under the provision in paragraph 360 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas.Dec. 150, T.D. 54108, for laboratory apparatus.

Plaintiff, originally, interposed several alternative claims in its protest. However, at the trial and in its brief, plaintiff relied solely upon its claim that the imported cycle ergometer is properly dutiable at the rate of 15 per centum ad valorem under the provision in paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108, for "Electrical therapeutic (including diagnostic) apparatus." More specifically, plaintiff contends that the cycle ergometer is dutiable as "diagnostic," rather than as "laboratory" apparatus.

Tompkins & Tompkins, New York City (Allerton deC. Tompkins, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Harvey Isaacs, Harold L. Grossman, and Brian S. Goldstein, New York City, trial attorneys), for defendant.

Before RAO, FORD, and NEWMAN, Judges.

The pertinent portions of the statutory provisions, as modified, are quoted below:

Paragraph 360 of the Tariff Act of 1930, as modified by the Sixth Protocol, *supra:*
\* \* \* laboratory \* \* \* apparatus \* \* \*, and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:
Slide rules \* \* \*
Other \* \* \* ...........................25½% ad val.

Paragraph 353 of said act, as modified by the Sixth Protocol, *supra:*
Electrical therapeutic (including diagnostic) apparatus, \* \* \* finished or unfinished, wholly or in chief value of metaal, and not specially provided for ...................................15% ad val.

At the trial, plaintiff presented the testimony of one witness (Peter M. Schick) and introduced into evidence a documentary exhibit depicting the merchandise in issue, received as Plaintiff's Illustrative Exhibit 1. Similarly, de-

fendant presented the testimony of one witness (Dr. W. T. Liberson). The consumption entry and invoices were received in evidence, without being marked.

The parties have stipulated to the fact that the involved merchandise is in chief value of metal.

Plaintiff's witness, Mr. Schick, was president of the plaintiff corporation, and since 1953 had been active in the sale, installation, and servicing of X-ray and electromedical equipment imported by his company. It appears that Mr. Schick held a degree in electrical engineering at the Technological Institute of Zurich, Switzerland, and had "studied medicine." Schick testified that he had become familiar with the nature, function, and uses of the imported apparatus by means of visits to hospitals and clinics in Scandinavia, where it was manufactured, and discussions there with doctors and engineers. Additionally, he had explored the possibility of sale and installation of the merchandise in the United States by bringing "one or two of the units over to this country." According to Mr. Schick, he was the exclusive distribution of Elema-Schonander ergometers in the United States, and had been importing them since 1957. Schick estimated that, in all, about 75 of the ergometers had been imported, and that they were sold to cardiovascular departments of hospitals and clinics all over the United States.

Although Mr. Schick testified that he had seen the ergometers in "many of the hospitals and clinics" which he had visited, he conceded that it was not possible at all times to see them in use when he went to those institutions, nor was he able to state where he had seen the ergometers in actual use, except for a few instances that he could remember or specify.

Mr. Schick explained that the cycle ergometer was engineered for the purpose of diagnosing cardiovascular conditions; that the patient assumes either a sitting or prone position and operates pedals, as on a bicycle, with either his feet or hands and thereby overcomes a predetermined workload. Thus, the cycle ergometer is simply a device for a person to perform a measured quantity of work. Continuing, Schick testified that with other instruments, which are not involved in this case, the patient may be examined for an electrocardiogram, blood pressure, and changes in pulse, and from these the physician may diagnose whether the patient is well or ill. Mr. Schick stated that he knew of no uses for the cycle ergometer other than for the diagnosis of heart and blood conditions, and that it was usually used in a cardiovascular department.

Schick's testimony established that the cycle ergometer has an electrical DC generator which puts a workload on the patient by resistance, and is an essential feature of the apparatus.

Defendant's witness was Dr. W. T. Liberson, a physician and chairman of the physical rehabilitation department of the School of Medicine of Loyola University; chief of physical medicine and rehabilitation at the Veterans' Hospital in Hines, Illinois; and a member of several professional societies. Moreover, Dr. Liberson has done research in different institutions since about 1930, and holds the degree of Doctor in Philosophy.

Dr. Liberson was "very familiar" with ergometers. He worked in a fatigue laboratory in Paris for many years, where an ergometer is an essential instrument; had his own electrical ergometer in the early Thirties; and was familiar with the early development of ergometers.

Significantly, too, Dr. Liberson had purchased two Elema-Schonander ergometers, the first in May 1962. He had used the ergometers to study fatigue, and at the very time of trial, Dr. Liberson was using them in his laboratory for neuropsychological research.

Dr. Liberson's concept of the term "diagnosis" involved finding the disease from which a patient may be suffering, and he disclaimed ever using the ergometers for that purpose. In point of fact,

Dr. Liberson stated that when he studied a person who had used the ergometer, he determined the subject's metabolism, energy expenditure, and heart rate, and he evaluated those factors.

Dr. Liberson also stated that the cycle ergometer merely indicates the measure of work performed by a patient or subject,[1] but if he used other equipment, he could evaluate or "diagnose" such factors as coordination of movement, electro-micrographic potential, metabolism, psychogalvanic reflexes, conditioning, electroencephalic reactions and others related to the fatigue of the subject. It was further pointed out by the witness that an ergometer alone would not tell him whether a subject had a disease, but that normally other equipment must be employed.

It is axiomatic that the action of the collector of customs in classifying merchandise for customs duty purposes carries with it a presumption of correctness. When, as here, a protest against such action is filed, the protestant has the burden of proving not only that the classification was wrong, but also of proving the claimed classification to be correct. Applying this principle to the instant case, the court is required to presume that the imported ergometer consists of "laboratory apparatus," which term has been judicially construed as applying to apparatus used for experiment or study; whereas plaintiff, on the other hand, has the burden of proving that the collector's classification is erroneous, and of proving the correctness of its claim that the merchandise consists of "diagnostic apparatus." Instrumentation Associates, Inc. v. United States, 58 Cust.Ct. 471, C.D. 3022 (1967), and cases cited therein; Thornley & Pitt et al. v. United States, 58 Cust.Ct. 178, C.D. 2926 (1967).

Since the provision for "laboratory instruments" is a provision implying use, it is the chief use of the merchandise which governs classification under that provision. *Instrumentation Associates, Inc., supra;* J. E. Bernard & Co., Inc. v. United States, 47 Cust.Ct. 263, Abstract 65925 (1961); J. E. Bernard & Co., Inc. v. United States, 44 Cust. Ct. 315, Abstract 63712 (1960). Also, in *Instrumentation Associates, Inc., supra,* this court held that for merchandise to fall within the purview of the provision for diagnostic instruments in paragraph 353, as modified, such merchandise must be chiefly used for diagnostic purposes, viz., in the process of identifying a disease from its signs and symptoms.

Hence, it is apparent that both the classification invoked by the collector and the tariff provision claimed applicable by plaintiff must be predicated upon the chief use of the involved merchandise. Cf. *Carmichael Forwarding Service, a/c Dallon's Laboratories, Inc. v. United States,* 56 Cust.Ct. 256, C.D. 2634 (1966). The primary issue in this case, therefore, is whether plaintiff has succeeded in sustaining its burden of proof.

It is well settled that chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate geographical cross section of the country. The court is reluctant to disturb the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification. *L. Tobert Co., Inc., American Shipping Co. v. United States,* 41 CCPA 161, C.A.D. 544 (1953). While the testimony of a single witness may be sufficient to prove a *prima facie* case, to establish or negative chief use, especially when the witness is an importer and

---

1. Blakiston's New Gould Medical Dictionary, Second Edition (1956), at page 414, defines the term "ergometer" as "an instrument which permits calculation of the work performed (weight multiplied by shortening) by a muscle or muscles over a period of time. *One form of this instrument is the ergometer bicycle,* a stationary bicycle on which the subject pedals against a measurable load." [Emphasis quoted.] Taber's Cyclopedic Medical Dictionary, Seventh Edition (1957), at page E–45, defines "ergometer" as "an apparatus for measuring the amount of work done by a human or animal subject."

distributor of the article in issue, the testimony of such witness must be of a sufficiently probative character to sustain all essential facts. Gallagher & Ascher Co. v. United States, 39 Cust.Ct. 1, C.D. 1892 (1957). Proof of design and intendment cannot supply the requirement of chief use. Dessart Bros. v. United States, 60 Treas.Dec. 553, T.D. 45169 (1931).

■ Applying the foregoing principles, we hold that the record herein does not satisfactorily negate the presumption of correctness attaching to the classification of the collector that the merchandise is a laboratory apparatus; nor does the record affirmatively establish the correctness of the protestant's claim that the cycle ergometer is a diagnostic apparatus.

■ Admittedly, Mr. Schick (who was not a physician) acquired much of his knowledge concerning the operation and use of the cycle ergometer in Scandinavia, where he had visited hospitals and clinics and had discussed the merchandise there with doctors and engineers. His testimony with reference to the use of cycle ergometers in the United States is vague and in general terms, and is, in our opinion, of little probative value. As typical of the vagueness and generality of Mr. Schick's testimony, we quote the following excerpt from his direct examination (R.9):

Q. Have you personally seen them being used in many places in the United States?—A. Yes; I have.

Q. Will you kindly say *whereabouts in the United States* you have seen them and where you have seen them used?—A. I have seen them in many of the hospitals and clinics that I visit. It is not at all times possible to see it in use when I go there. I am not in a position to tell exactly where I have seen the Ergometer in actual use, with the exception of a *few cases* that I remember. [Emphasis added.]

Q. Have you seen them in actual use on many occasions?—A. Yes, sir; I have.

Q. And in many places?—A. Yes, sir.

Nevertheless, on cross-examination, Mr. Schick testified (R.16):

Q. Tell me precisely where you have seen these Ergometers used?—A. I am going in and out of these places so often that I really—I try to mention a *few places* that I have definitely seen them used, but I have seen them used in many more places. Knowing that the instrument stands there I do not always pay attention to that fact whether they are used or not. I have seen them used at the University of California. [Emphasis added.]

Q. What year?—A. I could not tell you, sir.

Q. Continue.—A. Mayo Clinic.

Q. What year?—A. I do not know.

Q. Any other place?—A. I cannot tell you for definitely that I have seen them in use.[2]

■ Although Mr. Schick's testimony established that he had sold the ergometers to hospitals and clinics, the controlling consideration in this case is not the *place* where the merchandise was used, but the *purpose* for which it was used, viz., laboratory purposes. R. J. Saunders & Co., Inc. v. United States, 45 CCPA 87, C.A.D. 678 (1958); Westinghouse Electric Corporation v. United States, 55 Cust.Ct. 271, C.D. 2589 (1965), and cases cited therein. Consequently,

2. Where the issue is chief use, the only pertinent period of time is at or immediately prior to the time of importation. Randolph Rand Corp., J. J. Boll v. United States, 53 CCPA 24, C.A.D. 871 (1966); United States v. C. S. Emery & Co., 53 CCPA 1, C.A.D. 868 (1966); United States v. Baltimore & Ohio R. R. Co., 47 CCPA 1, C.A.D. 719; H. J. Baker & Bro. v. United States, 37 CCPA 52, C.A.D. 419. Mr. Schick testified at a hearing in May 1965, but the cycle ergometer was imported in February 1959. The use testified to by Mr. Schick is nowhere in the record pinpointed to the pertinent period of time.

even with respect to the ergometers which Mr. Schick observed in hospitals and clinics, there is no evidence upon which we could conclude that they were not being used for the purpose of experiment or study. No medical or technical witnesses were called by plaintiff from any of the "many" hospitals or clinics where Mr. Schick stated that he had observed the ergometers. Such witnesses, if qualified, doubtlessly could have testified as to the use of the apparatus. Further, Mr. Schick failed to disclose in what geographical locations in the United States he had seen the ergometers, or when he had seen them, or how often. Cf. *Carmichael Forwarding Service, supra.*

Also, Mr. Schick approximated that since 1957, some 75 of the ergometers had been imported. But he did not disclose any figure as to how many of those were in actual use in 1959, the year of importation, nor how many of those being used that he had observed. Cf. Linden Equipment Corp. v. United States, 52 Cust.Ct. 351, Abstract 68555.

Although the testimony of Mr. Schick and the pictures in Plaintiff's Illustrative Exhibit 1 (figures 1 and 2) [3] indicate that cycle ergometers were used in cardiovascular clinics in connection with patients suffering from cardiovascular disease, we are unable, on the record before us, to conclude that this constituted the chief use of the apparatus at or about the time of importation. Dr. Liberson's testimony, although in itself insufficient to establish chief use, clearly discloses the suitability of the cycle ergometer for laboratory use, and to that extent lends support to the correctness of the collector's classification.

We are also of the opinion that since the evidence fails to show that the imported apparatus was chiefly used in the diagnosis of cardiac and cardiovascular disease *in connection with therapeutic treatment of patients,* such apparatus is not covered by the provision in paragraph 353, as modified, un-

der which plaintiff claims. Cf. Westinghouse Electric International Co. v. United States, 28 Cust.Ct. 209, 221, C.D. 1411 (1952).

Under all the facts and circumstances herein, and in the absence of clear, credible, and probative evidence to negate the collector's classification and to substantiate the claimed classification, the court must overrule the protest and enter judgment for the defendant.