(C.D. 4129)

Applied Research Laboratories, Inc. v. United States

United States Customs Court, Second Division

(Decided November 20, 1970)

*Stein & Shostak* (*Arthur E. Schwimmer* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Herbert P. Larsen* and *G. Lee Sandler*, trial attorneys), for the defendant.

Before Rao, Ford, and Newman, Judges

Newman, Judge: These five consolidated protests involve the proper rate of duty on certain potentiometers imported from Switzer-

land and electrometers imported from Belgium, both entered at the port of Los Angeles.[1]

The merchandise was classified by the collector of customs as parts of laboratory instruments pursuant to paragraph 360 of the Tariff Act of 1930, as modified by T.D. 54108, and accordingly the importations were assessed with duty at the rate of 25½ per centum ad valorem. Plaintiff claims that the proper rate of duty is 13¾ per centum ad valorem under the provision in paragraph 353 of said Tariff Act, as modified by T.D. 52739, for "Other" articles having as an essential feature an electrical element or device.

We have concluded that the Government's classification is correct, and overrule the protests.

### THE STATUTES INVOLVED

Classified under:

Paragraph 360 of the Tariff Act of 1930, as modified by T.D. 54108:

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:

    *       *       *       *       *       *       *

Other (except * * *) _____ 25½% ad val.

Claimed under:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 52739:

Articles having as an essential feature an electrical element or device, such as * * *, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    *       *       *       *       *       *       *

Other (except * * *) _____ 13¾% ad val.

### THE ISSUE

In view of a stipulation of the parties that the imported articles have as an essential feature an electrical element or device, and are in chief value of metal (R. 2–3), the sole issue for decision is whether such articles are parts of laboratory instruments.

### THE RECORD

The record consists of the testimony of one witness and one exhibit introduced in evidence by plaintiff, and the above mentioned stipulation entered into by the parties.

---

[1] The potentiometers are covered by protests 62/1937, 62/7430, and 63/8199. The electrometers are covered by protests 62/9413 and 63/8206.

Plaintiff's witness, John Kosaftis, testified to the following effect:

The plaintiff corporation is a manufacturer of spectrochemical equipment. Kosaftis had been employed by plaintiff for approximately 20 years. During the period of importation (1960–61) and at the time of the trial, Kosaftis held the position of "regional field service manager for the western area of the United States", and was primarily responsible for the installation and maintenance of his company's spectrochemical equipment. Parenthetically, the witness did not delineate the geographical territory comprising "the western area".

The imported electrometers and potentiometers were used by plaintiff in the console or the measuring end of a direct-reading spectrometer. These spectrometers are a "production control instrument" (R. 10), and were sold by plaintiff primarily to producers of metal and commercial laboratories that analyze metals for such producers. However, one spectrometer (out of 25 to 30 which utilized the imported electrometers) was sold by plaintiff to a school in the East.

Producers of such metals as aluminum, steel, and brass utilize the direct-reading spectrometers for the purpose of determining the identity and concentration of various elements present in the metals. Additionally, a user or consumer of metal utilizes the spectrometer to ascertain whether the metal purchased conforms to its specifications. The spectrometers are used in a company's laboratory, and in commercial laboratories, which perform tests for small producers that cannot afford to maintain a laboratory.

Mr. Kosaftis testified that, in his opinion, the use of the direct-reading spectrometer for commercial quality control is not a use for experiment or study, and that he would categorize the use of the spectrometers with "applied science" rather than with "pure science." Unless the instrument is specially programmed to do so (which is generally not the case), the spectrometer will not identify an unknown substance.

The electrometer "looks" at the voltage in a capacitor and interprets what it sees, without taking any of that voltage from the capacitor, and reads the result on a strip chart recorder. While the imported electrometer here was designed "primarily" for plaintiff's spectrometer, and as imported could not be put into any other instrument, electrometers generally can be used as components of other pieces of electrical equipment.

Potentiometers are utilized by plaintiff as "a step attenuator" (a voltage resistor, "an electrical component") which at various positions attenuate, or cut down, electrical current. While Kosaftis "would guess" that his employer used potentiometers solely as parts of a spec-

trometer, these potentiometers were not specially designed for a spectrometer, and could be used in other pieces of equipment. In Kosaftis' experience, the majority of uses to which potentiometers were put were practical commercial uses.

PLAINTIFF'S BURDEN OF PROOF

To sustain its burden of proof in this case, plaintiff was required to establish that the imported articles were not parts of laboratory instruments, as classified by the Government. The test of whether articles are "parts" of laboratory instruments is one of dedication to use with laboratory instruments. *J. J. Boll et al.* v. *United States*, 55 CCPA 86, C.A.D. 937 (1968). Our appellate court held in *Boll* (see discussion *infra*) that "the term 'laboratory instruments' implies instruments used for laboratory purposes." See also *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678 (1958).

And this court has determined that "laboratory purposes" refer to use for experiment or study. *Thornley & Pitt, Misco, Inc.* v. *United States*, 58 Cust. Ct. 178, C.D. 2926, 266 F. Supp. 350 (1967); *The A. W. Fenton Co., Inc* v. *United States*, 49 Cust. Ct. 242, Abstract 67085 (1962).

USE OF IMPORTED ARTICLES AS COMPONENTS IN DIRECT-READING
SPECTROMETERS—CHIEF USE

Plaintiff contends that the electrometers and potentiometers were used as components in the manufacture of direct-reading spectrometers, and that the latter devices are not laboratory instruments.

Whether or not direct-reading spectrometers are laboratory instruments within the purview of paragraph 360 is a question of chief use. *Schick X-Ray Co., Inc.* v. *United States*, 62 Cust. Ct. 97, C.D. 3689, 295 F. Supp. 302 (1969), and the several cases cited therein. In *Schick*, we commented concerning the proof necessary to establish "chief use" (62 Cust. Ct. at 101):

> It is well settled that chief use is a question of actual fact which must be established on the basis of positive testimony representative of an adequate geographical cross section of the country. The court is reluctant to disturb the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification. *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953). While the testimony of a single witness may be sufficient to prove a *prima facie* case, to establish or negative chief use, especially when the witness is an importer and distributor of the article in issue, the testimony of such witness must be of a sufficiently probative character to sustain all essential facts. *Gallagher & Ascher Co.* v. *United States*, 39 Cust. Ct. 1, C.D. 1892 (1957). Proof of

design and intendment cannot supply the requirement of chief use. *Dessart Bros.* v. *United States*, 60 Treas. Dec. 553, T.D. 45169 (1931).

Plaintiff urges the court to find that at the time of importation, direct-reading spectrometers were chiefly used in the United States for commercial purposes of metallurgical quality control. We have carefully reviewed the record and concluded that plaintiff's evidence is insufficient to establish the chief use of direct-reading spectrometers.

While the record does show that nearly all of the spectrometers with which plaintiff's sole witness had personal experience were used for metallurgical quality control (or for determining whether metal conformed to its own specifications), plaintiff's evidence is inadequate to establish *prima facie* that such use was the chief use of direct-reading spectrometers throughout the United States.

The experience of Kosaftis with spectrometers was based entirely upon his duties as the importer's "regional field service manager for the western area of the United States." The witness' duties apparently were limited to installing and servicing plaintiff's equipment in a limited area of the United States, the extent of which was not shown. Thus, it is a fair inference that the witness was personally familiar only with the uses to which some of plaintiff's customers put their spectrometers.

However, even if the witness had personal knowledge concerning the use of all of the spectrometers sold by plaintiff (which the record does not establish), plaintiff was not shown to be the only manufacturer of direct-reading spectrometers at the time of importation. Indeed, Kosaftis testified merely that the direct-reading spectrometer "is no longer unique. It is made by various sundry competitors to my company" (R. 17). Such testimony obviously fails to prove that plaintiff was the only seller of direct-reading spectrometers in the United States during the period of 1960–61. In point of fact, the expression "no longer" is vague and meaningless, since it does not necessarily relate back to the dates of importation.

Moreover, there is nothing whatever in the record which establishes that plaintiff sold spectrometers throughout the United States.

In brief, plaintiff's sole witness was qualified to testify only as to the use made of direct-reading spectrometers by the customers which he serviced. Under the circumstances of this case, his testimony does not establish chief use throughout the United States in accordance with plaintiff's contention.

Although plaintiff has attempted in its brief to corroborate the testimony of Mr. Kosaftis with extensive quotations from the *Encyclopaedia Britannica* concerning the application of spectroscopy to metal-

lurgical quality control, the quoted material does not prove that direct-reading spectrometers were chiefly used in the United States for such commercial quality control.

Since plaintiff has not succeeded in proving that direct-reading spectrometers are non-laboratory instruments, the use of the imported components with such instruments does not aid plaintiff in overcoming the presumption of correctness attaching to the classification.

### DEDICATION TO USE WITH LABORATORY INSTRUMENTS NOT NEGATED

Plaintiff contends also that if the court should find that the direct-reading spectrometer is a laboratory instrument, the collector's classification should nevertheless be overruled since the evidence establishes that the electrometers and potentiometers are not dedicated to use as parts of spectrometers.

Such contention in our view misconceives the issue and the law applicable thereto.

To briefly reiterate: The sole issue in this case is whether the articles were properly classified as parts of *laboratory instruments*. We find nothing in the record or the official papers which suggests that the Government's classification of the imported articles was predicated upon their dedication to use with spectrometers. It was plaintiff who brought up the issue relating to use of the merchandise with spectrometers. Hence, even if the articles are not dedicated to *spectrometers*, this cannot be fatal to the correctness of the classification as parts of *laboratory instruments*. In other words, to prevail in this action plaintiff had to prove that the merchandise was not dedicated to use in laboratory instruments, and a mere showing that the merchandise was not dedicated to use in spectrometers is insufficient to overcome the classification.

The facts in *Boll, supra*, do not aid this plaintiff, despite its heavy reliance upon that holding. In *Boll*, certain photomultiplier tubes were classified by the Government as parts of laboratory instruments under paragraph 360 of the Tariff Act of 1930 and were claimed by appellant to be properly dutiable under paragraph 353 of said tariff act. The evidence established that the tubes were not limited to use in any particular device, but were used in a wide variety of devices and instruments. The appellate court listed some twenty-seven uses the witnesses had testified to from personal knowledge. Moreover, the appellate court found that "the evidence is clear that a substantial number of uses of the tubes, in fact most of the uses attributed to them by the witnesses for appellants, are not as parts of laboratory instruments." (55 CCPA at 88). In reversing the decision and judgment of this court, the appellate court concluded that the appellants had made a

*prima facie* case that the tubes were not dedicated to use as parts only of laboratory apparatus.

The present case is clearly distinguishable from *Boll*, inasmuch as plaintiff herein has failed to establish by competent, probative evidence that the electrometers and potentiometers were not dedicated to use with laboratory instruments. We find that plaintiff's witness had no actual experience, observation, or personal knowledge concerning the use of the imported articles other than in connection with installing and servicing spectrometers for the importer. Under similar circumstances, in *Greenberg & Josefsberg* v. *United States*, 28 CCPA 138, C.A.D. 135 (1940), the testimony of a witness as to the general use of an article was rejected by our appellate court as purely speculative based on a showing that the witness' knowledge was limited to the uses of his employer and that said employer had only one use for the articles.

Additionally, we have considered that, so far as the record indicates, Mr. Kosaftis did not have the education or training in electrical engineering or electricity which might have given him the requisite expertise in the use of electrometers and potentiometers.

Thus, respecting the potentiometers we are not inclined to attach any probative value to the allegations of plaintiff's witness concerning uses with toy trains and cameras, and we regard his statements as to "a million uses you could put it to" (R.11) and "[i]t can be used anywhere" (R.16) as purely speculative.

We also emphasize that the witness' testimony covering the electrometers is confusing and contradictory, as illustrated by the following (R.5) :

> Q. Could that electrometer [the importation] be used with any other instruments or was it designed for this particular instrument * * * ?
>
> A. * * * These particular electrometers were designed for this instrument [spectrometer]. *I suppose it could be used with other instruments.*
>
> Q. As imported, was it [electrometer] capable of being put into any other instrument?
>
> A. *No; it was not.* It was *primarily* for this instrument. [Emphasis added.]

To summarize, applying the dedication test, plaintiff has failed to establish *prima facie* that the imported eletrometers and potentiometers are not parts of laboratory instruments. From his personal knowledge and experience, apparently plaintiff's witness was competent to testify as to only one use for electrometers and potentiometers: direct-reading spectrometers. Applying the test of chief use,

plaintiff has failed to meet its burden of proving that such spectrometers are not laboratory instruments. Consequently, under all the facts and circumstances, plaintiff has not shown the Government's classification to be erroneous.

The protests are overruled, and judgment will issue accordingly.