(C.D. 2358)

SCHICK X-RAY Co., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 19, 1962)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Alfred A. Taylor, Jr.*, and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The subject merchandise is described on the invoices as automatic high pressure injectors and various parts thereof or as cardio-angiography high pressure injectors and various parts thereof. Upon importation, the articles were classified by the collector of customs as surgical instruments, within the purview of paragraph 359 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 359), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and duty was imposed thereon at the rate of 45 per centum ad valorem.

Plaintiff claims the devices are not surgical instruments or parts of surgical instruments and makes various claims for classification at lower rates of duty, none of which claims has been abandoned. The claims and the order of their preference are as follows:

1. As electrical therapeutic (including diagnostic) apparatus and parts thereof, in chief value of metal, in paragraph 353 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 353), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, at 15 per centum ad valorem.

2. As articles having electrical elements as essential features, in said paragraph 353, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, at the rate of 13¾ per centum ad valorem.

3. As hospital utensils in chief value of steel in paragraph 339 of said act (19 U.S.C. § 1001, par. 339), as modified by the sixth protocol, *supra*, at 17 per centum ad valorem.

4. As parts of X-ray apparatus in said paragraph 353, as modified by the sixth propocol, *supra*, at 7½ per centum ad valorem.

5. As laboratory apparatus in paragraph 360 of said act (19 U.S.C. § 1001, par. 360), as modified by the sixth protocol, *supra*, at 25½ per centum ad valorem.

At the trial of this case, but one witness was called, who testified on behalf of plaintiff, and the following exhibits were received in evidence:

Plaintiff's exhibit 1—a photograph of a complete unit as imported, except for the compressed air cylinder, which is identified by the letter "A" on the exhibit.

Plaintiff's exhibit 2—a photograph of the imported apparatus, except for the air cylinder marked "A," which discloses the exposed portion of the unit.

Plaintiff's exhibit 3—consisting of three pages of descriptive literature, numbered "three," "four," and "five," which contains pictures similar to exhibits 1 and 2 and, in addition, a picture of a top view of the apparatus, showing control buttons and instruments.

Peter M. Schick, president of Schick X-ray Co., Inc., plaintiff herein, was the witness called on behalf of plaintiff. He stated he is in charge of sales and all service arrangements for his company, which imports X-ray equipment, distributes it in the United States, and services and repairs said equipment. Schick, in addition to being an X-ray technician, is an electrical engineer and has been in the X-ray business for the last 28 years. Since 1953, he has sold and serviced equipment similar to the merchandise in issue and has sold it in every state of the Union, principally to large hospitals and clinics.

From the testimony of Schick, the following facts appear. The imported articles comprise electromechanical apparatus and parts used in the diagnosis of cardiac and cardiovascular diseases. Since a blood vessel or the heart cannot be shown in a plain X-ray, it is necessary to fill the heart or blood vessel with a dye or contrast medium. This dye or contrast medium must be sent through the human body at a very high rate of speed, because of the speed at which the blood circulates through the body. The imported apparatus consists of a pressure mechanism, a heating unit, which keeps the dye at body temperature, and an X-ray release mechanism. Although not imported with the apparatus, a needle, connected by polyethylene tubing to a "Luerlok" connector on the apparatus (indicated by the letter "B" on exhibit 1), is used. When the instant apparatus is in use, the needle, which is employed in conjunction therewith but which is not part of the importation, is inserted into the patient either by a doctor, a nurse, or the X-ray technician. The needle is inserted into any blood vessel, and the dye or contrast medium is released under

control through the pressure mechanism into the blood system and, at the right moment, an X-ray filming device is released, which takes up to 12 exposures per second of the patient's heart or blood system. The end result is to obtain X-ray films of a patient which show a heart defect, such as a leaking valve or a hole in the heart wall, which can then be treated by a physician.

The dye or contrast medium may be of any of several such liquids on the market produced by different firms. The dye contains a material which is X-ray opaque. Without the use of such a medium, X-rays would go through the blood vessel or heart without leaving a shadow, whereas the use of the dye or contrast medium makes it possible to produce a shadow of the heart or blood vessel.

The imported apparatus is operated by an X-ray technician who needs no special training, apart from experience with X-ray machines and the specific instructions which are provided when the units are delivered and installed. Anyone skilled in operating X-ray apparatus could use and does use the imported articles. The apparatus is not used as a tool by surgeons, but is used in the X-ray department of large hospitals and clinics for diagnostic purposes to permit a physician, after looking at the film, to determine the exact location of the cardiac or vascular defect. The imported apparatus is not used at any time during a surgical operation.

At point "X" in figure No. 12, on exhibit 2, there is a motor pump assembly which takes care of the circulation of warm water produced at figure 13. It consists of a water container, a heating unit, and a contract thermometer. The warm water is circulated throughout the unit, and a water jacket keeps the dye or contrast medium at the correct body temperature. Inside figure 13 there are additional containers of the contrast medium which can be kept at the right temperature for future use. Figure 7, on exhibit 2, depicts the instrument board where switches for the timing delay and the contact mechanism are located and to which all the electrical connections are made. In addition, there is an electrical heating unit. All of the foregoing portions are essential parts of the apparatus in question and are electrically operated.

The imported apparatus is portable and can be taken from one X-ray apparatus to another and is always used in connection with an X-ray unit.

The imported apparatus provides a uniform flow of the dye or contrast medium throughout the period of its functioning. The pressure and flow can be preset as can the temperature of the medium. The apparatus is also provided with a safety device, which makes it impossible to use when there are any air bubbles present.

From the foregoing detailed exposition of the testimony of witness Schick, the following salient facts appear:

1. The imported apparatus is used in the diagnosis of cardiac and cardiovascular diseases in connection with the therapeutic treatment of patients.

2. It is operated in conjunction with X-ray apparatus, primarily by X-ray technicians.

3. It is not used during surgical operations nor is it operated by surgeons.

4. The apparatus contains electrical features which are essential to its operation.

5. The imported articles are used throughout the United States in hospitals and clinics.

In the case of *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, C.D. 2148, this court decided that otoscopes, containing essential electrical features and used by pediatricians and general practitioners for diagnosis and therapeutic treatment of ear conditions, were not surgical instruments, as they had been classified by the collector of customs, but were electrical therapeutic (including diagnostic) instruments, as claimed by the importer therein. In the course of the opinion, it was stated that whether or not an article may properly be considered to be a surgical instrument depends in the last analysis upon whether or not it is an instrument chiefly used by surgeons.

The record presently before the court discloses that the apparatus in issue is not used by surgeons nor is it used during the course of a surgical operation. We are of the opinion, therefore, that the automatic high pressure injectors and cardio-angiography high pressure injectors and parts thereof are not surgical instruments, as classified by the collector.

It appears further from the record herein that the apparatus in controversy is used to inject a dye or contrast medium into the blood stream of a patient who is suffering from cardiac or cardiovascular trouble, so that a series of X-ray photographs may be taken to aid a physician in the diagnosis and treatment of the patient. The record also discloses that the imported articles have electrical features essential to their operation. It is apparent, therefore, that the injectors and parts thereof come within the purview of the provision of paragraph 353 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*, for electrical therapeutic (including diagnostic) apparatus, which is the primary claim of the plaintiff herein.

We are of the opinion that this provision, by its terms, specifically provides for the articles in issue and predominates over the alterna-

tive claims of plaintiff for articles having as an essential feature an electrical element or device, or as parts of X-ray apparatus in paragraph 353, hospital utensils in paragraph 339, or laboratory apparatus in paragraph 360.

Due consideration has been given to the briefs of the parties hereto and to the cases cited, but nothing therein deters us from the conclusion herein reached.

Upon the record before the court, we find and hold that the automatic high pressure injectors and cardio-angiography injectors and parts thereof, in chief value of steel, which were classified by the collector of customs as surgical instruments in paragraph 359 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, as supplemented, and assessed with duty at the rate of 45 per centum ad valorem, should properly have been classified as electrical therapeutic (including diagnostic) apparatus and parts thereof, within the purview of paragraph 353 of said act, as modified by the sixth protocol, for which duty at the rate of 15 per centum ad valorem is provided. The claim in the protest to that effect is, therefore, sustained. All other claims are overruled.

Judgment will be entered accordingly.