(C.D. 2421)

INSTRUMENTATION ASSOCIATES *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 20, 1963)

*Siegel, Mandell & Davidson* (*David Serko* of counsel) for the plaintiff.
*John W. Douglas*, Acting Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Two pieces of apparatus, one a "Pulmotest" and the other a "Pulmo-analysor," were classified by the collector of

customs as surgical instruments in paragraph 359 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 359), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and were subjected to duty at the rate of 45 per centum ad valorem.

The claim in the protest relied upon by plaintiff is that the imported articles should properly have been assessed with duty at the rate of 17½ per centum ad valorem within the provision in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, which reads as follows:

Electrical apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for:
    \* \* \* therapeutic (including diagnostic)

  \*      \*      \*      \*      \*      \*      \*

Alternative claims made by plaintiff in its protest, but not pressed in the subsequent proceedings, are that the imported devices are subject to classification as articles having as an essential feature an electrical element or device, not specially provided for, in paragraph 353 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at 13¾ per centum ad valorem, or are classifiable as articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, not specially provided for, in said paragraph 353, as modified by the General Agreement on Tariffs and Trade, *supra*, and dutiable at 15 per centum ad valorem.

At the hearing of this case, the only witness called to testify was Dr. Harold A. Lyons who appeared on behalf of plaintiff. During the course of the trial, a photographic representation of the imported apparatus, which appears on page "vi" of a pamphlet entitled "Diseases of the Chest," an official publication of the American College of Chest Physicians, was received in evidence as plaintiff's collective illustrative exhibit 1, the imported "Pulmotest" being represented by the figure "1" and the "Pulmo-analysor" by the figure "2."

Introduced into the record was a lengthy summary of Dr. Lyons' educational background, teaching affiliations, and various previous and present hospital appointments, and, as plaintiff's exhibit 2, there was received in evidence a list of Dr. Lyons' memberships in medical and scientific societies.

Dr. Lyons stated his present main occupation is as Professor of Medicine and Director of Pulmonary Disease Service at Kings County Hospital Center, Brooklyn, N.Y. He had been in charge of this particular division for the past 8 years and, during that time, has

supervised the diagnosis and treatment of approximately 25,000 patients. In connection with his work, a "Pulmotest" and "Pulmo-analysor" have been used under his direction, supervision, and control in making tests on from 600 to 1,200 patients per year. When asked to explain the purpose of said articles in conjunction with examination of patients, Dr. Lyons explained that they are used in the same fashion as blood pressure apparatus would be used, stating—

* * * you use a blood pressure apparatus to see if blood pressure is normal, and in this instance we try to find out whether the lungs are normal, whether they have normal evalutory abilities, normal volume relationships, etc., and usually they will help us, sometimes, make a diagnosis of disease that may not be able to be evaluated in any other fashion, and will distinguish two types of pulmonary disease, in restrictive form and the obstructive form.

The data obtained from the use of the Pulmotest and Pulmo-analysor is recorded on a chart and is used to guide the treatment and management of the patient and, during the course of therapy, to show the progress which has been made.

Dr. Lyons stated that 10 per centum of the total patients tested with the use of the imported instruments ultimately become surgical patients, but the Pulmotest and Pulmo-analysor are not used in connection with the subsequent surgical procedure on said patients.

Dr. Lyons testified that he is a Fellow of the American College of Chest Physicians and is also Official Examiner of the Board of Internal Medicine, as well as a member of the American Medical Association and a number of other organizations. He stated that he attends most of the meetings of said associations, where he meets doctors and surgeons from throughout the United States and abroad. On these occasions, he has discussed the use of the instant Pulmotest and Pulmo-analysor, and he stated that these people are using the imported articles in the same fashion for diagnostic purposes.

The proceedings before the court concluded with a stipulation of fact that each of the imported articles illustrated by plaintiff's collective exhibit 1 consists of an electrical apparatus, instrument, or device, which is wholly or in chief value of metal, and has as an essential feature an electrical element or device.

The competition between "surgical instruments," provided for in paragraph 359 of the Tariff Act of 1930, as modified, and the provision for electrical therapeutic (including diagnostic) instruments in paragraph 353 of said act, as modified, was the subject of decision in *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, C.D. 2148. The merchandise involved in that case consisted of otoscopes, electrical instruments used by pediatricians and general practitioners to introduce light into the ear canal and eardrum of patients for diagnostic purposes, which were held to be electrical therapeutic (including diagnostic) instruments, rather than surgical instruments.

In the later case of *Arthur Salm, Inc.* v. *United States*, 46 Cust. Ct. 68, C.D. 2235, percussion hammers used by physicians to test reflexes to determine their presence or absence, or whether they have diminished or become hyperactive, were held not to be surgical instruments in paragraph 359 of the Tariff Act of 1930, as modified, as classified by the collector of customs, since they were employed by physicians in their diagnostic study of patients rather than by surgeons in the practice of surgery. The court held that the percussion hammers in the *Salm* case, *supra*, should properly have been classified as articles or wares, not specially provided for, composed wholly or in chief value of base metal, in paragraph 397 of said act, as modified.

In the course of decision of the above-cited cases, it was recognized that the term "surgical instruments," a use provision, dealt with instruments used in surgery. Consideration was given to the scope and meaning of "surgery," and, in the *Salm* case, *supra*, the court expressed itself as follows—

Our concept of surgery suggests an operation in which there is a cutting of the tissue or other parts of the human or animal body in order to remove diseased tissue, an unhealthy organ, or by manual manipulation to correct a deformity, to mention a few instances. * * *

A review of the testimony of Dr. Lyons in the instant case discloses that the Pulmotest and Pulmo-analysor before the court are instruments or devices used by a physician in the diagnosis and care of patients being examined for pulmonary diseases or respiratory disorders. Whereas the record discloses that 10 per centum of the patients so examined with the use of the instruments in controversy become surgical cases, it is also a fact that, in the surgical procedure of their treatment, the Pulmotest and Pulmo-analysor are not used at all.

Since the unrefuted testimony of record discloses that the imported apparatus is not used by surgeons in the practice of their profession, it follows, therefore, that plaintiff herein has overcome the presumption of correctness attaching to the classification by the collector of customs of the articles in issue as surgical instruments in paragraph 359 of the Tariff Act of 1930, as modified.

The record before the court also shows that the Pulmotest and Pulmo-analysor are used by medical practitioners in the course of their examination and diagnosis of patients suspected of having respiratory diseases or disorders. If such use is their chief use, the imported articles would come within the purview of the provision for electrical therapeutic (including diagnostic) instruments of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, since their function is diagnosis and their means of operation is concededly electrical.

It remains to be determined whether the chief use of the Pulmotest and Pulmo-analysor for said diagnostic purposes is supported by the record.

On the matter of "chief use," we quote from the decision of our appellate court in the case of *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765, as follows:

We are not unmindful of the rule that in order to establish "chief use" the evidence of use must relate to the United States generally, and not to a limited portion thereof. It may be proper to observe, however, that the question of whether "chief use" has been properly established depends upon the issues and the evidence in each case.

We think it is a proper deduction from the evidence, and from the character of Exhibits 1, 2, and 3, that the involved articles would be used in substantially the same manner, and by substantially the same class of people, in one section of the country as in another, and that evidence establishing their chief use in a large area of the country is sufficient under the rule.

The evidence of record in the instant case consists of the unrefuted testimony of plaintiff's witness, Dr. Harold A. Lyons. It was the testimony of Dr. Lyons, a Fellow of the American College of Chest Physicians and Official Examiner of doctors practicing throughout the United States, and a member of many medical associations, the conventions and meetings of which he attends, that use of the instant Pulmotest and Pulmo-analysor generally throughout the medical profession in the United States was in the diagnosis and treatment of respiratory diseases and disorders.

As was stated in the decision of the court in the *Empire Findings* case, *supra*—

This court may well take judicial notice of the fact that medical procedures tend to become standardized, and that techniques of diagnosis and therapy are ordinarily disseminated throughout the medical world through the medium of journals, conventions, and, indeed, correspondence among leading authorities in the various specialities. Consequently, it is reasonable to infer that differences in procedures are not likely to exist on a purely geographical basis. And where a given medical instrument is used in one manner by physicians in one locality, its use by doctors elsewhere in the United States would probably not vary.

In the light of the *Woolworth* and *Empire Findings* cases, *supra*, we are of the opinion, in the circumstances of the instant case, that chief use for diagnostic purposes of the Pulmotest and Pulmo-analysor in issue has been proven, and the validity of plaintiff's primary claim has been established.

In view of the conclusion we have reached, further consideration need not be given to the alternative claims of plaintiff, since the primary claim is the most specific.

Upon the record before the court and for the foregoing reasons, we hold that the Pulmotest and Pulmo-analysor in issue should properly

have been classified as electrical therapeutic (including diagnostic) instruments within the purview of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, and subjected to duty at the rate of 17½ per centum ad valorem. That claim in the protest is, therefore, sustained. All other claims are overruled.

Judgment will issue accordingly.