(C.D. 3782)

Carmichael International Service, Inc., a/c Dallons Laboratories, Inc., et al. v. United States

United States Customs Court, Second Division

(Decided April 15, 1969)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Mollie Strum*, trial attorney) for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: The issue in this case concerns the proper tariff classification of certain imported medical-electronic apparatus described as MM41R Micromanometers (or electronic amplifiers), MSD8 Transducers, and RA8 Transducers. Three protests were ordered consolidated for purposes of trial: the MM41R and MSD8 articles are both involved in protests 63/19609 and 63/19674; and the RA8 Transducers are the only items covered by protest 65/25356.

The merchandise was assessed with duty by the collector of customs as surgical instruments at the rates of 45, 40½ and 36 per centum ad valorem, under paragraph 359 of the Tariff Act of 1930, as modified

by T.D. 52373, T.D. 55615, and T.D. 55816, depending upon the date of entry. Plaintiffs claim that the merchandise is properly dutiable at the rates of 15, 13½ and 12 per centum ad valorem, depending upon the date of entry, under the provision for electrical therapeutic (including diagnostic) apparatus, instruments (other than laboratory), and devices in paragraph 353 of the Act, as modified by T.D. 54108, T.D. 55615, and T.D. 55816.

Quoted below are the tariff provisions involved.

Classified under:

Paragraph 359 of the Tariff Act of 1930, as modified by T.D. 52373:

Surgical instruments, and parts thereof, including hypodermic syringes and forceps, composed wholly or in part of iron, steel, copper, brass, nickel, aluminum, or other metal, finished or unfinished (except hypodermic and other surgical needles, and except instruments and parts in chief value of glass)_____ 45% ad val.

The rate of duty in paragraph 359 was further reduced by T.D. 55615 and T.D. 55816 to 40½ per centum ad valorem as to entries made after June 30, 1962 and before July 1, 1963, and to 36 per centum ad valorem as to entries made after June 30, 1963 and before September 1, 1963.

Claimed under:

Paragraph 353 of the Tariff Act of 1930, as modified by T.D. 54108:

Electrical therapeutic (including diagnostic) apparatus, instruments (other than laboratory), and devices, finished or unfinished, wholly or in chief value of metal, and not specially provided for_____ 15% ad val.

The rate of duty provided in paragraph 353 was further reduced by T.D. 55615 and T.D. 55816 to 13½ per centum ad valorem as to entries made after June 30, 1962 and before July 1, 1963, and to 12 per centum ad valorem as to entries made after June 30, 1963 and before September 1, 1963.

The MM41R Micromanometer and the MSD8 Transducer were the subject of our decision in *Carmichael Forwarding Service, a/c Dallon's Laboratories, Inc.* v. *United States*, 56 Cust. Ct. 256, C.D. 2634 (1966), wherein this court overruled plaintiff's claim that the articles were electrical therapeutic (including diagnostic) instruments under paragraph 353, as modified, without affirming the collector's classification as surgical instruments under paragraph 359, as modified. We held that the testimony of plaintiff's sole witness, Jordan D. Frasier of Dallon's Laboratories, Inc. (who also testified in the present case), was insufficient to establish the chief use of the merchandise throughout the United States. Additionally, it was pointed out that assuming

*arguendo* that the chief use was diagnostic, plaintiff's proof had failed to negate the exclusion specified in paragraph 353, as modified, for laboratory instruments; and that there was a failure of proof on the issue of surgical use, since no competent opinion testimony was presented to the effect that heart catheterization is not a surgical procedure.

During the present trial, the record in *Carmichael, supra*, was incorporated (on plaintiffs' motion), and was augmented by the testimony of two medical witnesses, a cardiologist and a thoracic surgeon, together with additional testimony by Mr. Frasier, now president of Dallons Laboratories, Inc. There was also received in evidence eleven exhibits, representing or depicting the merchandise and its operation.

The established facts show:

The MM41R Micromanometer and MSD8 Internal Transducer consist of medical-electronic equipment used by cardiologists (specialists in the diagnosis and treatment of heart disorders), normally in connection with other devices which are not involved in this case, for measuring heart pressure and sound. Such pressure or sound may be visually displayed or recorded on an oscilliscope or graphic recorder. The MSD8 is comprised of a transducer head, and is mounted on a catheter which has electrical connectors at the end so the transducer may be connected through a cable to the MM41R Micromanometer. The MM41R and MSD8 devices are used together for the purpose of diagnosing heart disorders by cardiac catheterization in order to determine whether surgery is needed.[1]

Cardiac catheterization has become an accepted or standard diagnostic procedure, and most generally involves making a small incision in the skin of the right arm to expose a peripheral vein or artery (performed by the cardiologist with a scalpel), and advancing a catheter (thin plastic tube) through the vessel under fluoroscopic vision to a heart chamber. When the MSD8 Transducer at the tip of the catheter arrives inside the heart, the intracardiac pressure and sounds are transmitted electronically through a flexible cable within the catheter to the Micromanometer which produces and measures them for audio or visual observation.

Cardioangiography injections are commonly done as a part of cardiac catheterization. That procedure involves the injection of a dye through a catheter into one of the cardiac chambers in order to make it possible to see the inside of the heart for the purpose of diagnosis.

Cardiac catheterization with the MSD8 Transducer and MM41R Micromanometer is not used during open heart surgery, since once

---

[1] At the first trial, Mr. Frasier testified that one MM41R was sold to the National Aeronautics and Space Administration (NASA) for non-medical use. Neither party contends that the merchandise involved in this case is chiefly used outside the medical field, nor does the record indicate this. We are, therefore, satisfied that the articles in issue are chiefly used in the medical field, and the issue in this case is limited to determining the nature of the medical use.

the heart is open, determination of pressure is not important at that time. Hence, cardiac catheterization precedes open heart surgery, and a surgeon is normally not present when such catheterization is performed by the cardiologist. Cardiac catheterization is regarded medically as a diagnostic rather than surgical procedure. Information obtained from catheterization (together with the patient's history), physical examination, and X-ray studies are used to make a definitive diagnosis, so that a decision can be made regarding the advisability of surgery; and if surgery is indicated, what type of surgery is required.

The RA8 External Transducer coupled with an M41R Electromanometer is used by cardiologists or anesthesiologists for measuring arterial and venous pressures (outside the heart) by catheterization, except that the transducer is not inserted into the body, but is used externally. The external transducer, therefore, resembles in use the Baumanometer or blood pressure cuff, and is used both for diagnostic purposes prior to surgery and for monitoring blood pressure during and after surgery.

The articles in issue are chiefly used in hospitals and clinics, in connection with patients therein, and in most places they are located in a cardial facility which is in the charge of a cardiologist.

The parties have stipulated that the merchandise is in chief value of metal and has an essential electrical feature.

Plaintiffs contend (Brief, 20) that "[t]he record as now made herein, consisting of the uncontradicted testimony of the surgeon, the cardiologist, and the electronics expert who testified for plaintiffs, clearly establishes that the Dallons equipment at issue herein does not constitute surgical instruments within the scope of Par. 359 of the Tariff Act of 1930, as judicially construed, and that it constitutes diagnostic instruments, as claimed by plaintiffs."

The Government contends that although cardiac catheterization is diagnostic, nevertheless it is a surgical procedure, and the articles in issue were properly classified as surgical instruments.

We sustain plaintiffs' claim as to the MM41R Micromanometers and MSD8 Transducers, but overrule their claim as to the RA8 Transducers.

Initially, we shall consider the MM41R Micromanometers and MSD8 Transducers. Counsel have called our attention to a number of decisions of this court which involved the issue of whether various devices were classifiable as surgical instruments. *Schick X-Ray Co., Inc.* v. *United States*, 49 Cust. Ct. 38, C.D. 2358 (1962), heavily relied upon by plaintiffs, appears most closely analogous on the facts.

In *Schick*, classification of automatic high pressure injectors, cardio-angiography pressure injectors, and parts were in issue. The imported articles were used in the diagnosis of cardiac and cardiovascular diseases. When the apparatus was in use, a needle was inserted

into a blood vessel by a doctor, nurse, or X-ray technician and a dye or contrast medium was released under pressure into the blood stream, making it possible to obtain X-ray photographs showing a heart defect, such as a leaking valve or a hole in the heart wall, which can be treated by a physician. The imported apparatus provided a uniform flow of the dye or contrast medium throughout the period of its functioning. It appears that the aparatus was not used by surgeons; that it was not used during the course of a surgical operation; and that it was used in the X-ray department of large hospitals and clinics for diagnostic purposes to permit the physician, after looking at the film, to determine the exact location of the cardiac or vascular defect. Based upon such facts, this court held in *Schick* that the merchandise was properly classifiable under paragraph 353 of the Tariff Act of 1930, as modified, as electrical therapeutic (including diagnostic) apparatus and parts thereof, rather than as surgical instruments under paragraph 359, as modified, following *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, C.D. 2148 (1960).

In *Empire Findings*, otoscopes (electrical instruments used by pediatricians and general practitioners to introduce light into the ear canal and eardrums for diagnostic purposes) were held not to be surgical instruments, as classified, but electrical therapeutic (including diagnostic) instruments, as claimed. The majority opinion stated (*id.*, at 29) :

> * * * whether or not an article may properly be considered to be a surgical instrument depends in the last analysis upon whether or not it is an instrument chiefly used by surgeons.

We deem it unnecessary to unduly extend this opinion with a discussion of each of the other decisions relied upon by plaintiffs. It suffices to point out that this court has repeatedly held that instruments or devices which are not chiefly used by surgeons in the practice of their profession, but are chiefly used by other medical practitioners for diagnostic purposes, are not "surgical instruments" as that term has been judicially construed. See *Empire Findings Co., Inc.*, 51 Cust. Ct. 262, Abstract 68126 (1963) (stethoscopes chiefly used by general practitioners in the general practice of medicine for diagnostic purposes) ; *Instrumentation Associates* v. *United States*, 51 Cust. Ct. 136, C.D. 2421 (1963) ("Pulmotest" and "Pulmo-analysor" used by physicians in examination and diagnosis of patients suspected of having respiratory disorders) ; and *Arthur Salm, Inc.* v. *United States*, 46 Cust. Ct. 68, C.D. 2235 (1961) (percussion hammers used by physicians to test reflexes). Moreover, this court has held that, notwithstanding the imported article may be utilized during surgery, it is not classifiable as a surgical instrument if "it is not part of the surgical technique." *The O.E.M. Corp.* v. *United States*, 50 Cust. Ct. 138, C.D. 2402 (1963).

*Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, 29, C.D. 2148 (1960), held:

> Like the provision for surgical instruments, the provision in paragraph 353, *supra*, for electrical therapeutic instruments, including diagnostic apparatus, may also be termed a use designation. So, the plaintiff in this case has assumed the dual burden of negativing chief use by surgeons and of affirmatively establishing chief use in medicine for diagnosis. These are factual issues to be shown by a fair preponderance of positive testimony.

On the basis of the record as now made, plaintiffs have sustained their dual burden of proof, as stated above, with respect to the MM41R Micromanometer and MSD8 Internal Transducer.

Plaintiffs' two medical witnesses were eminently qualified in their respective specialties of cardiology and thoracic surgery, and thoroughly familiar with the use by the medical profession of the merchandise involved in this case. Their unrebutted testimony clearly established that the MM41R and MSD8 devices are not utilized by surgeons, but by cardiologists; that cardiac catheterization as performed with that equipment is a diagnostic rather than surgical procedure; and that although an accurate preoperative diagnosis is essential to the successful performance of heart surgery, the MM41R and MSD8 articles are not the essential equipment of a surgeon, but that of the cardiologist who has made the diagnosis in advance of surgery.

The record as now made also establishes *prima facie* that the MM41R Micromanometer and MSD8 Internal Transducer are chiefly used in hospitals and clinics for the diagnosis of heart disease in patients by cardiac catheterization, and are not "laboratory instruments" as that term has been judicially construed. See *Instrumentation Associates, Inc.* v. *United States*, 58 Cust. Ct. 471, C.D. 3022 (1967).

In defense of the collectors classification of the merchandise, the Government relies upon several decisions of this Court wherein it was held that the involved merchandise was dutiable as surgical instruments. Although in our view, defendant's reliance upon these cases is misplaced, brief discussion of them is warranted.

*Carl Zeiss, Inc.* v. *United States*, 72 Treas. Dec. 538, T.D. 49237 (1937), involved gastroscopes (instruments designed for use by surgeons in examining the human stomach) which were held by this court to be surgical instruments. A surgeon, testifying on behalf of the Government, stated that he used the gastroscope in his profession, and that no one without a knowledge of surgery was competent to handle that instrument; that a physician other than a surgeon could not handle the instrument; and that the insertion of the gastroscope into the throat and stomach of the patient was in itself a surgical operation.

*Jensen Salsbery Lab., Inc.* v. *United States*, 66 Treas. Dec. 363, T.D. 47313 (1934), held that certain imported plier-type devices, used by veterinary surgeons to pierce the ears of cattle in applying thereto metal identification tags to identify those which had been treated with serum, were properly dutiable as surgical instruments. After reviewing previous decisions holding chief use by surgeons to be the determinative test, this court stated (page 365) :

> * * * the real test is whether the instrument forms part of the necessary equipment of a surgeon to enable him efficiently to practice his profession of surgery.

In commenting upon the foregoing statement in *Empire Findings Co., Inc.* v. *United States*, 44 Cust. Ct. 21, 28, C.D. 2148 (1960), this court observed:

> * * * Although this test extends the scope of the surgical instrument provision beyond the field of those articles actually employed in the performance of surgery, it is not a repudiation of the doctrine that surgical instruments are those only which are chiefly used by surgeons. Indeed chief use by veterinary surgeons in performing the ear-piercing operations served as the basis for the court's decision.

*J. J. Boll, Metro Medical Dist., Inc.* v. *United States*, 34 Cust. Ct. 218, C.D. 1707 (1955), held that Guedel laryngoscopes, used largely in the administration of tracheal anesthetics, were surgical instruments. An ear, nose, and throat surgeon called as a witness by defendant testified that he considered laryngoscopes as surgical instruments, and that he regarded the use of the laryngoscope for the administration of tracheal anesthetics as a surgical maneuver or operation. It further appeared that the particular hospital with which the surgeon was associated, classified the anesthetist who used the laryngoscope as part of the surgical division of the hospital.

Consequently, we observe that in the cases relied upon by defendant, the instruments involved therein were used by surgeons, or a member of the surgical team (anesthetist), for performing a surgical operation or procedure. Such is not the situation in the present case, since the MM41R Micromanometer and MSD8 Transducer are used by cardiologists for diagnosing heart disease, and cardial facilities in most hospitals are not located in the surgical department (R. 41–42). The cases cited in defendant's brief are, therefore, distinguishable from the present one.

Defendant also refers (Brief, 10) to the definition of catheter in *Funk & Wagnalls Standard Dictionary*, 1963 edition, which was quoted in our opinion in the first *Carmichael* case, *id.* at 260.[2] Such

---

[2] In the prior decision this court stated: "Catheter is defined in *Funk & Wagnalls Standard Dictionary*, 1963 edition, as (medically) a 'slender tubular, *surgical instrument* for introduction into canals or passages.' " [Emphasis in original.]

quotation was merely dictum, since the classification of catheters *per se* was not in issue, nor was any ruling made on the merits of the issues presented. Similarly in the present case, the classification of catheters *per se* is not before us, nor in any event would a ruling thereon be dispositive as to the classification of the Micromanometers and Tranducers involved herein.

Finally, we deal with plaintiffs' claim relative to the RA8 External Transducers, which are the subject of protest 65/25356.

The testimony of plaintiffs' medical witnesses shows that the external transducer (exhibit 5) was used for diagnostic purposes and also for monitoring blood pressure during and after surgery. However, the record fails to establish whether the chief use of the RA8 device was for diagnosis or monitoring.

The cardiologist, who testified on behalf of plaintiffs, explained that monitoring devices are "different gadgets used to decide how the patient's general condition is during surgical procedure" (R. 22). The surgeon testified that monitoring procedures during surgery include temperature, blood pressure, venous pressure, and electroencephalograms. He stated: "These all give us valuable information as to the condition of the patient during the procedure" (R. 51). Although both of plaintiffs' medical witnesses agreed that "monitoring" is not part of the surgical technique, but the responsibility of the anesthesiologist, there is no evidence in the record that monitoring a patient's "general condition," unrelated to identifying a disease or disorder, is medically regarded as a "diagnostic" procedure. We deem it to be common knowledge that it is not the function of an anesthesiologist to diagnose diseases during surgery.

To fall within the common meaning of the term "diagnostic" and hence to be "diagnostic instruments" in the tariff sence, the merchandise must be chiefly used throughout the United States as an aid to physicians in identifying a disease or illness from its signs or symptoms. *Instrumentation Associates, Inc.* v. *United States*, 58 Cust. Ct. 471, C.D. 3022 (1967). Since plaintiffs' proof fails to establish that the RA8 External Transducer was chiefly used to measure blood pressure as an aid in identifying disease, as opposed to monitoring the general condition of a patient, we are constrained to find a failure of proof that such device is a "diagnostic instrument" within the purview of paragraph 353, as modified, as claimed.

In view of the foregoing, protests 63/19609 and 63/19674 covering the MM41R Micromanometers and MSD8 Transducers are sustained; and protest 65/25356 covering the RA8 Transducers is overruled, without affirming the collector's classification.

Judgment will be entered accordingly.