(C.D. 3990)

W. N. PROCTOR COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 3, 1970)

*Walter E. Doherty, Jr.*, for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Patrick D. Gill*, trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

LANDIS, Judge: This protest involves merchandise imported from France and described on the manufacturer's invoice as fused quartz tubing, closed at one end. Customs at Boston, Mass., the port of entry, classified and assessed the tubing under the Tariff Schedules of the United States (hereinafter TSUS) item 547.53, as follows:

Schedule 5, part 3,[1] subpart C:

|  |  |  |
|---|---|---|
|  | Pharmaceutical, hygienic, and laboratory glassware, whether or not graduated or calibrated: |  |
| 547.53 | Containing over 95 percent silica by weight _____ | 20% ad val. |

Plaintiff, having serviced the customs entry of the tubing at Boston for Arklay S. Richards Co., Newton Highlands, Mass., protests the above classification and claims that the tubing should be properly classified and assessed with duty under TSUS item 548.01, as follows:

Schedule 5, part 3, subpart D:

GLASS ARTICLES NOT SPECIALLY PROVIDED FOR

|  |  |  |
|---|---|---|
|  | Articles not specially provided for, of glass: Tubes and tubing with the ends processed: |  |
| 548.01 | Containing over 95 percent silica by weight_____ | 14% ad val. |
|  | *    *    *    *    *    *    * |  |
| 548.05 [2] | Other _____ | *    *    * |

Tubes and tubing not processed, are classified in subpart A of part 3, schedule 5, dutiable under TSUS items 504.41 and 540.43. Subpart A does not, however, cover "articles * * * described in subpart C of

---

[1] For the purposes of the tariff schedules, fused quartz is regarded as glass. TSUS, schedule 5, part 3 headnote.

[2] We do not reach defendant's alternative claim for classification under TSUS item 548.05.

\* \* \* [part 3]," [3] nor can articles be classified in subpart D, pursuant to plaintiff's claim, if the articles are specially provided for in subpart C, since subpart D only covers all articles of glass, not specially provided for.

For the purposes of decision in this case, we assume that the imported fused quartz tubing is described in TSUS item 548.01 as must be established by plaintiff but nevertheless overrule the protest for failure of plaintiff to overcome the presumption that it is also laboratory glassware, specially provided for under TSUS item 547.53. *J. E. Bernard & Co., Inc.* v. *United States*, 44 Cust. Ct. 315, Abstract 63712 (1960).

Exhibits, illustrative of the imported tubing, are in evidence. (Collective illustrative exhibit 1.) A catalogue containing information about the imported tubing, put out by Arklay S. Richards Co., Inc. and a page from the catalogue of Leeds & Northrup, a competitor company, limited to the illustration on the page bearing identifications lettered A and B indicating how the tubing is used, completes the physical and documentary evidence. (Exhibits 2 and 3.)

Mr. Arklay S. Richards, president and treasurer of the firm bearing his name, was the only witness called to testify on trial. He testified that he sells the imported tubes to the major steel companies in the United States, which he identified by name. The steel companies, he said, use the tubes to hold and protect thermo-couple elements (two wires joined together) introduced into molten metal to measure the temperature up to four thousand degrees Fahrenheit.

Both sides have filed briefs which agree that the tariff classification "laboratory glassware" is a use provision and describes articles of glass used for laboratory purposes. *J. J. Boll et al.* v. *United States*, 55 CCPA 86, C.A.D. 937 (1968). "A tariff classification controlled by use (other than actual use) is \* \* \* determined in accordance with the use in the United States, at or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined".[4]

Plaintiff argues that the testimony that the imported tubing is sold to major steel companies which use the tubes with a thermo-couple element to measure high temperatures of molten metal is sufficient, *prima facie*, to overcome the presumption that it is laboratory glassware. Plaintiff in our opinion, treats the presumption too lightly. When customs classified the imported tubes for tariff purposes, it is presumed to have found all the facts necessary to support the classifi-

---

[3] Subpart A headnote 1 (i).
[4] TSUS General Headnotes and Rules of Interpretation, 10 (e) (i).

cation as "laboratory glassware". *New York Merchandise Co., Inc.* v. *United States*, 27 CCPA 117, C.A.D. 72 (1939). We do not know that when the imported tubes are used by the major steel companies it is not a laboratory purpose, and the operations of steel companies are much too diverse for us to infer that the described use is not in connection with a laboratory purpose. It is also a fact that, Mr. Richards, while he knew what the imported tubes were used for, could not recall a particular place in the plant where he had seen them used. We would also note that the customs classification as "laboratory glassware" is supported by the dictionary meaning of the term "laboratory" defined to include:

> \* \* \* 2. *Metal.* The hearth of a reverberating furnace. [Webster's New International Dictionary, Second Edition, 1945.][5]
> \* \* \* 2. A department as in a factory for research, testing, and experimental technical work. [Funk & Wagnalls Standard Dictionary, International Edition, 1963.]

The protest is, therefore, overruled.

Judgment will be entered accordingly.

(C.D. 3991)

---

[5] See also, Webster's Third New International Dictionary, 1968.