(C.D. 4319)

Propper Mfg. Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided December 30, 1971)

*Siegel, Mandell & Davidson* (*Harvey A. Isaacs* of counsel) for the plaintiff.
*L. Patrick Gray, III*, Assistant Attorney General (*Robert E. Burke* and *Steven P. Florsheim*, trial attorneys), for the defendant.
*Barnes, Richardson & Colburn* (*Earl R. Lidstrom, Joseph Schwartz*, and *Peter J. Fitch* of counsel) ; *Busby, Rivkin, Sherman & Levy* (*Donald H. Rivkin* of counsel) as amici curiae.

Before Richardson and Landis, Judges, and Rosenstein, Senior Judge

Landis, Judge: In this case, plaintiff protests the classification of microscope slides, imported from West Germany in January 1966, as laboratory glassware, dutiable at 42.5 per centum ad valorem under item 547.55 of the Tariff Schedules of the United States (TSUS).

Plaintiff claims that the slides should be classified as glass, dutiable under TSUS item 544.17 at the modified rate of 22.5 per centum ad valorem provided for said item in the Appendix to the Tariff Schedules, Part 2, item 924.00.[1]

The competing tariff provisions provide as follows:

Classified:

Pharmaceutical, hygienic, and laboratory glassware, whether or not graduated or calibrated:

\*     \*     \*     \*     \*     \*     \*

547.55        Other_____ 42.5% ad val.

Claimed:

Glass (including cast, rolled, drawn, or blown glass, whether or not containing wire netting or surface ground or polished), cut to other than rectangular shape (except glass provided for in item 541.01), and glass (including cast, rolled, drawn, or blown glass, whether or not containing wire netting or surface ground or polished), whether in rectangles or cut to other than rectangular shape, subjected to bending, curving, beveling, edging, notching, drilling, chipping, sanding, embossing, engraving, etching, coating, staining, enamelling, painting, decorating, or any combination thereof, all the foregoing glass, whether or not such cutting or processing dedicates the glass to a specific use, but not including any article hereinafter described in this subpart or described in subpart A or C of this part:

\*     \*     \*     \*     \*     \*     \*

Other:

\*     \*     \*     \*     \*     \*     \*

544.17        Other _____ \* \* \*

924.00    Glass, cut to other than rectangular shape, and glass, whether in rectangles or cut to other than rectangular shape, subjected to processing, all the foregoing glass provided for in item 544.17 of part 3B of schedule 5 if drawn or blown and not containing wire netting and not surface ground or polished_____ 22.5% ad val.

---

[1] Plaintiff abandoned its claim under TSUS item 542.11 as modified by item 923.11.

The record includes slides, introduced by plaintiff, identified as a safety grip slide made in the United States (exhibit 1) ; a select brand slide made in the United States (exhibit 2), and so-called "Bev–L–Edge" slides allegedly representative of the imported merchandise (exhibit 3). Defendant introduced into the record certain advertising material relevant to slides (exhibits A and B) ; a box (containing slides) with printed matter *inter alia* identifying the contents of the box as "1 x 3 inch" "Propper Bev–L–Edge Micro Slides Ground, Beveled Edges and Rounded Corners, Non-Corrosive – Non-Fogging specially made for Blood Smears and all Routine Microscopy Cleaned – Washed – Ready to Use", and which a witness stated was illustrative of the box used in 1966 to market "Bev–L–Edge" slides (exhibit C), and select brand slides of the quality of exhibit 2 (exhibits D and E).

At the trial, plaintiff called three witnesses. The sum of their testimony is that select quality slides are used in laboratories for research, experiment and study; that exhibits 1 and 3 are second quality disposable slides used in laboratories for blood smears and routine microscopy, and that blood smears are made and put under a microscope to determine a set of findings upon which a doctor can make a diagnosis. It is stipulated that the "Bev–L–Edge" slides are chiefly used in areas designated as laboratories.

Plaintiff, for its side contends that the imported "Bev–L–Edge" slides are not laboratory glassware because the slides are not used for a laboratory purpose, citing *W. N. Proctor Company* v. *United States*, 64 Cust. Ct. 275, 277, C.D. 3990 (1970), a purpose which purportedly must be associated with experiment and study, citing *Instrumentation Associates, Inc.* v. *United States*, 58 Cust. Ct. 471, C.D. 3022, 269 F. Supp. 777 (1967) (electrical instruments used to test or measure pulmonary ventilation); *Westinghouse Electric Corporation* v. *United States*, 55 Cust. Ct. 271, C.D. 2589 (1955) (high vacuum melting and casting furnaces), and that a use for diagnostic purposes or incident to diagnosis is not a use for experiment or study, citing *Instrumentation Associates, Inc., supra*, and *Carmichael International Service, Inc., a/c Dallons Laboratories, Inc., et al.* v. *United States*, 62 Cust. Ct. 399, C.D. 3782 (1969) (electronic amplifier or micromanometer).

The briefs on defendant's side [2] contend that there is no proof that the imported slides are chiefly used for other than a laboratory purpose; that if not laboratory glassware, the slides are hygienic glassware; that the classification as laboratory glassware is supported by relevant legislative history,[3] and that plaintiff has failed to prove

[2] In addition to defendant's brief, on motion without objection, two briefs in amicus curiae were filed on defendant's side.

[3] Tariff Classification Study, Schedule 5, page 145, items 547.53 and 547.55 ; Explanatory Notes to the Brussels Nomenclature, Volume II, heading 70.17, page 624.

that the slides are of the kind of glass provided for in item 544.17.

For reasons we shall briefly discuss, we conclude that microscope slides, chiefly used for blood smears and routine microscopy in laboratories, are properly classifiable as laboratory glassware, cf. *F. B. Vandegrift & Co., Inc.* v. *United States*, 55 CCPA 24, C.A.D. 928 (1967), and overrule the protest.

The briefs here all agree that the tariff term "laboratory" when used to classify a broad category of articles, in this case "laboratory glassware", implies or is intended to cover articles used for laboratory purposes. *J. J. Boll, et al.* v. *United States*, 55 CCPA 86, 87, 88, C.A.D. 937 (1968) ; *W. N. Proctor Company* v. *United States, supra.*

The cases in this court, relied on by plaintiff for the association of experiment and study with laboratory purposes and the differentiation of diagnostic purposes from strictly laboratory purposes, are of course precedents for the rationale they offer in determining whether particular apparatus, under the applicable tariff act provisions involved in those cases, was or was not used for laboratory purposes. The rationale, we might note, did not evolve out of anything the court of appeals held or said, see *Boll* v. *United States, supra*, footnote page 88.[4] Nor is there any need to say more than that the cases relied on by plaintiff involved apparatus that was not "glassware" and tariff classifications not concerned with "glassware". The question that emerges, therefore, is not whether the rationale of those cases is necessarily sound as to those cases, but whether the same rationale is applicable to the classification of "laboratory glassware". For the reasons we shall next discuss, in our opinion, it is not.

It is, we believe, common knowledge that a myriad of glass articles are used in laboratories. Determining whether particular glass articles are used in the laboratory for the purpose of "experiment and study", for the purpose of "diagnosis", or for general purposes, begets, as plaintiff's chief witness was brought to suggest, of semantics that, in the context of "laboratory glassware" not only confuses but makes little or no sense. No one has testified that glassware used in the laboratory is categorized into that used for purposes of "experiment and study", that used for purposes of "diagnosis", and that used for general purposes. The relative legislative history, on the other hand, supports the fact that the "laboratory glassware" provided for in TSUS item 547.55 was classified under paragraph 218(a) of the 1930 Tariff Act,[5] and that the heading "laboratory glassware" in the Brus-

---

[4] "Although our attention has not been directed to any decision of this court on the point, the Customs Court has indicated that 'laboratory purposes' refers to use for experiment or study. *The A. W. Fenton Co., Inc.* v. *United States*, 49 Cust. Ct. 242, Abstract 67085."

[5] Tariff Classification Study, Schedule 5, page 145.

sels Nomenclature is intended to cover glass articles of a kind in general use in laboratories, including microscope slides.[6]

As plaintiff admits (brief page 13), the case of *F. B. Vandegrift & Co., Inc.* v. *United States*, 55 CCPA 24, C.A.D. 928 (1967), which affirmed the decision of this court sustaining the customs classification of micro-slides, under paragraph 218(a) of the Tariff Act of 1930, assures that, prior to TSUS, the imported slides would have been classified under paragraph 218(a) of the 1930 Tariff Act.

There is nothing in the cases relied on by plaintiff (as we have remarked, the cases did not involve glassware) which compels that we adopt the rationale of those cases in the classification of "laboratory glassware". Judicial precedent and legislative history support the customs classification of the microscope slides under TSUS item 547.55 as "laboratory glassware", previously classified under paragraph 218(a) of the 1930 Tariff Act. The protest is, therefore, overruled.

Judgment will be entered accordingly.

[6] Explanatory Notes to the Brussels Nomenclature, Volume II, heading 70.17, page 624. The so-called "Brussels Nomenclature" greatly influenced the arrangement of the tariff schedules (Tariff Classification Study, Submitting Report, page 8). When the Brussels heading is substantially the same as the TSUS heading, the Brussels explanatory note on the heading is persuasive of what is intended by the TSUS heading. *Herbert G. Schwarz, dba Ski Imports* v. *United States*, 57 CCPA 19, 22, C.A.D. 971 (1969).