(C.D. 2428)

J. E. BERNARD & CO., INC. v. UNITED STATES

## United States Customs Court, Second Division

(Decided January 22, 1964)

*Wallace & Schwartz* (*Earl R. Lidstrom* and *Joseph Schwartz* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Creative skill has given us a unique device known as a "Vitascope." It is not the Vitascope of earlier days which was used in the motion-picture industry. This new invention is a contrivance which, at the time of this trial, has been in use in this country for about 4 years.

The instrument is used for the purpose of determining the germinating properties of seeds, such as oats, rye, barley, et cetera, based upon what is known as the tetrazolium process. This will be described more in detail, *infra*.

The importation is referred to on the "SPECIAL CUSTOMS INVOICE" as—

```
1 Vitascope Model S complete
4    –       –  G   –
```

Also included with the shipment were so-called accessories, consisting of a hydraulic vacuum pump for water tap, rubber hose for vacuum pump, sieve, a water tap connection, 6- and 100-watt lamps, a manual, splitting machine, 4 sample holders, and Vitascope powder.

A letter from the collector of customs transmitting the protest to the court states that the merchandise was classified in liquidation as "Scientific or laboratory apparatus nspf, other," in paragraph 360 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 360), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and duty was imposed thereon at the rate of 25½ per centum ad valorem. From the foregoing, it would seem that the collector classified the Vitascope and accessories as one unit.

Plaintiff claims that the imported apparatus should be classified as an article in chief value of metal, having as an essential feature

an electrical element or device, within the provisions of paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, and dutiable at the rate of 13¾ per centum ad valorem.

The parties have stipulated and agreed that the importation is in chief value of metal and that it has as an essential feature an electrical element.

The competing provisions of the statutes involved are here set forth.

Paragraph 360 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Scientific and laboratory instruments, apparatus, utensils, appliances (including mathematical instruments but not including surveying instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for:
> Slide rules * * *
> Other (except analytical weights; balances; laboratory scales; laboratory instruments, apparatus, or appliances, for determining the strength of materials or articles in tension, compression, torsion, or shear; moisture testers; pyrometers; and parts of any of the foregoing) ___ 25½% ad val.

Paragraph 353 of said act, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device * * * finished or unfinished, wholly or in chief value of metal, and not specially provided for:
> Batteries

> *    *    *    *    *    *    *
> Other * * *_____ 13¾% ad val.

John W. Wastcoat, the only witness in the case, testified on behalf of plaintiff. He stated that, for the past 5 years, he had been vice president of the Burrows Equipment Co. of Evanston, Ill., for whose account the merchandise was imported. He described his company as a small one, largely engaged as a selling organization. His familiarity with the Vitascope had been gained during the past 4 years "By studying it, working it, by selling it, by demonstrating it," having conducted at least 100 demonstrations. He gave the following description of the process by which it operates:

* * * The Vitascope is based upon what is known as a tetrazolium process. This is a well known process in the seed industry, and basically it consists of taking a solution of what is known as triphenyl, tetrazolium powder, and when that comes in contact with the embryo of the seed, it releases enzymes, and if the seed is capable of germinating, it stains that embryo red, so that you can determine if there is a stain, the seed is capable of germinating. If there is no stain, it is not capable of germinating.

Depending upon the seed being tested, grains, such as oats or barley, can be tested in 10 minutes whereas, for some of the smaller seeds, it might require 40 minutes or an hour.

Prior to the introduction of the Vitascope, the standard or conventional method of testing seeds consisted of—

* * * actually growing the seed under artificial conditions by inducing humidity and light, and having the seed grow. Now the benefit of the Vitascope is that you can get the same result in a very short time, and that is very valuable when you consider in the case of some seeds it takes up to 48 days to germinate.

Wastcoat stated that there were approximately 75 Vitascopes in use in the United States; that, as exclusive distributor in this country, he knew the Vitascopes had been sold largely to small seed dealers and seed companies. Its selling price is $395. He had personally serviced the machines, demonstrating their use to purchasers. The first Vitascope was sold in this country to the Mississippi State University, which conducts what is known as a "seedman's short course, and they get people from the company and try to improve their knowledge, * * * they asked us to demonstrate it for the seed trade, and at that time we sold two of them." The machines have been sold mostly throughout the Middle West, since that is where, principally, the seeds are grown and where most of the seed dealers are located. The witness described the users of these Vitascopes as "very small operators. Some of them wouldn't know what a laboratory was." Of the 75 machines being used in the United States, the witness stated that not more than half a dozen were used in laboratories of state colleges.

The witness explained that a seed dealer would take a Vitascope along to visit his clients from whom he regularly bought seeds and would make tests of the seeds on the spot.

On cross-examination, defendant introduced a pamphlet, entitled "VITASCOPE, INSTRUCTION MANUAL, A/S Foss Electric" (defendant's exhibit A), describing the subject merchandise; also a leaflet, marked defendant's exhibit B, issued by the Burrows Equipment Co., containing material descriptive of the Vitascope and its uses.

As has been stated, *supra*, the collector of customs classified the Vitascopes in issue within the broad provision for "Scientific or laboratory apparatus nspf, other," in paragraph 360 of the Tariff Act of 1930, as modified by the sixth protocol, *supra*. Plaintiff, through the testimony of Witness Wastcoat, seeks to establish the collector's classification to be incorrect and that the merchandise should properly find classification as electrical articles in paragraph 353 of said act, as modified by the Torquay protocol.

On the question of whether or not the imported articles are laboratory apparatus for customs duty purposes, plaintiff, both at the

trial and in its brief, endeavors to prove they are not such devices, for the reason that of the 75 Vitascopes in use in this country not more than 6 of them are used in laboratories, placing the accent of its proof on the *place* of use.

In the case of *R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678, our appellate court considered at some length the provision for "laboratory instruments" in paragraph 360 of the Tariff Act of 1930 and was there of the view that—

* * * the test for compliance with the term "laboratory instruments" is use for laboratory purposes.

It is for the court to determine, therefore, on the evidence presented, whether or not the instant Vitascopes are used for laboratory purposes.

In the case of *The A. W. Fenton Co., Inc.* v. *United States*, 49 Cust. Ct. 242, Abstract 67085, this court had occasion to rely on the *Saunders* case, *supra*, in determining the proper classification of a beat frequency oscillator, a high speed level recorder, and a db potentiometer, used to measure the ability of electrical or acoustical devices to respond to audio frequencies. It was there held that said importation consisted of electrical articles of the kind provided for in paragraph 353 of the tariff act, rather than as laboratory instruments within the provisions of paragraph 360 of said act. In arriving at its decision, the court found on the evidence presented that the devices there in issue were used for practical commercial purposes and not for a laboratory use in experiment or study.

The record discloses that the sole function of the Vitascope is to provide a means of rapid determination of the germinating quality of grain seed. The record further discloses that the instant Vitascopes are chiefly used by seed dealers for the commercial purpose of determining the quality of the seed they intend to buy or sell.

The court is of the opinion, therefore, that, since the devices in controversy are used principally by seed dealers for the practical purpose of determining the germinating capacity of seed they contemplate buying or selling and are not devoted to purposes of experiment or study, they are not laboratory instruments in a tariff sense.

Classification of the Vitascopes in issue was in the alternative of "Scientific or laboratory apparatus nspf, other." Having decided that the instant devices are not laboratory instruments, we must give consideration to their classification as scientific instruments. For an article to be classified as a scientific instrument, said device must be used in pure, as distinguished from applied, science. *W. L. Conover* v. *United States*, 17 CCPA 324, T.D. 43743.

As has been stated, *supra*, the Vitascopes before the court are used principally by seed dealers for the practical purpose of determining the germinating capacity of seed. It is evident, therefore, that said articles are not used in pure science and, consequently, do not come within the provision for scientific instruments or apparatus in paragraph 360 of the tariff act.

It is well established that the collector's classification is presumed to be correct and that the importer must sustain the burden of proving that the classification is wrong. *United States* v. *Loffredo Bros., Gehrig Hoban & Co., Inc.*, 46 CCPA 63, C.A.D. 697. In the instant case, the only testimonial evidence presented to the court was on behalf of plaintiff through its witness, Wastcoat. Defendant, in its brief, attacks the sufficiency of plaintiff's evidence and cites the case of *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495, *inter alia*, wherein our appellate court, in a valuation proceeding, referred to what constitutes substantial evidence and distinguished between ultimate facts and evidentiary facts.

Whereas it is true, as above stated, that the classification of merchandise by the collector of customs carries with it a presumption of correctness, it is also true that said presumption can not be regarded as having evidentiary value and can not be weighed against the evidence produced at the trial of a case. *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037. It has also been held by our appellate court that—

\* \* \* the uncontradicted and unimpeached testimony of a single competent and credible witness may be sufficient to overcome the presumption in support of the collector's assessment and establish a *prima facie* case in favor of the protestant. \* \* \*

*United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325.

In the case presently before the court, we are of the opinion that the uncontradicted testimony of plaintiff's witness, a representative of the sole distributor in the United States of the Vitascopes in issue, who had been actively engaged in demonstrating, servicing, and selling the devices principally to seed dealers, provides ample evidence to overcome the presumption attaching to the classification by the collector of customs.

By stipulation of the parties hereto, it has been agreed that the instant Vitascopes are composed in chief value of metal and that they possess as an essential feature an electrical element or device. It follows, therefore, that said articles come within the purview of paragraph 353 of the Tariff Act of 1930, as modified, *supra*, which provides duty for such articles at the rate of 13¾ per centum ad valorem That claim in the protest is, therefore, sustained.

Judgment will be entered accordingly.