(C.D. 4176)

PACKARD INSTRUMENT COMPANY ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 9, 1971)

*Schwartz & Lidstrom* (*Barnes, Richardson & Colburn, Earl R. Lidstrom* and *Irving Levine* off counsel) for the plaintiffs.

*L. Patrick Gray, III*, Assistant Attorney General (*Steven R. Sosnov* and *Frederick L. Ikenson*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges; FORD, J., dissenting in part

NEWMAN, Judge: These eight consolidated protests concern the proper rate of duty on multi-channel analyzers and various parts

thereof, imported from France in 1963. The merchandise was classified by the then collector of customs under the provision for parts of scientific or laboratory instruments in paragraph 360 of the Tariff Act of 1930, as modified, at the rates of 22½% or 22% ad valorem, depending upon the date of entry. The Government, however, claims alternatively that should the court find that the multi-channel analyzers were not "parts," but rather, were complete analyzers, then the proper classification should still be under paragraph 360, *supra*, and thus the merchandise is dutiable at the rates of duty assessed, under the provision for scientific and laboratory instruments, rather than for "parts" of such instruments.

Plaintiffs claim that all of the merchandise is properly dutiable under the provision in paragraph 353, as modified, for articles having as an essential feature an electrical element or device, or parts thereof, at the rate of either 12½% or 11½% ad valorem, depending upon the date of entry.

For the reasons discussed, the protests are overruled.

STATUTES INVOLVED

The pertinent provisions of the Tariff Act of 1930, as modified by T.D. 55615 and T.D. 55816 are as follows:

ASSESSED

| Paragraph | Description of Products | Rates of Duty |
|---|---|---|
| 360 | Scientific and laboratory instruments, apparatus, utensils, and appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for: | |
| * | *   *   *   *   * | *   * |
| | Other (except * * *)_____ | 22½% ad val. (22% on or after 7/1/63) |

CLAIMED

| | | |
|---|---|---|
| 353 | Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, all the foregoing and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for: | |
| * | *   *   *   *   * | *   * |

Other (except * * *)_____12½% ad val.
(11½% on or after 7/1/63)

The record consists of: a photograph (plaintiffs' exhibit 1) depicting an SA–40 multi-channel analyzer and certain instruments used therewith; an advertising brochure of plaintiffs (defendant's exhibit A); and the testimony of Robert Mook, employed by the importer as Product Manager of the kind of instrument under consideration.

## – SA–40 Multi-Channel Analyzer –

The imported SA–40 multi-channel analyzer is a self-contained unit, weighing about 600 pounds. It contains ferrite memory cores in which information is stored, transistors, resistors, capacitors, and other essential electronic components mounted on printed circuit cards; and further, the SA–40 contains its own power supply. The SA–40 accepts input pulses from an external force and sorts them according to "amplitude," viz., the size (in voltage) of an incoming electrical pulse. In sorting these pulses the SA–40 stores them according to size in channels in its memory core. A "channel" is the address number in the instrument's memory. The instrument can display this information on a cathode ray tube, or print the information on a teletype machine or some digital device.

The electrical pulse received by the instrument may come from a number of different sources, including nuclear detectors, Coulter counters,[1] vibration transducers, photomultiplier tubes, and any other transducing device that would change a physical denominator to an electrical impulse. The SA–40 will not perform work without an electrical input from some source which will give it a varying amplitude pulse. The SA–40 can be used in laboratories and for scientific study. However, it cannot be used for mathematical purposes, and can only sort data according to size, keep track of this information, and display it on a read-out or printer.

## – External Parts of SA–40 –

The articles described on the invoices as: RG 23 computer, probes, printers, output drives, data display units, and input mixing and routing accessory, serve to perform their functions external to the SA–40. Probes are used in the nuclear industry for detecting gamma radiation, and provide an output electrical pulse which is proportional

---

[1] The Coulter counter is depicted in exhibit 1 as being used with an SA–40. A Coulter counter is a device which gives off an electrical signal proportional to the size of particles suspended in a fluid passing through an opening. It is used to count blood cells, dirt particles, germs, and anything suspended in a liquid; it counts them by number giving an indication of their size.

to the energy of the gamma rays detected. A printer is a digital mechanical device which prints numbers on paper. Display units are electronic devices containing a cathode ray tube or an oscilliscope used to display the information in the SA–40's memory. The routing unit allows up to four probes to feed information into the SA–40. Each of the foregoing external parts contains electrical elements without which they could not operate.

– Internal Parts of SA–40 –

The parts which are used on the inside of the SA–40 unit include: V–20 unit, cathode ray tubes, printed circuit boards, sub-assemblies, and linear amplifier. All of the foregoing parts, except the V–20 unit, are essential to the operation of the SA–40. The V–20 applies high voltage to an input device such as a probe or to a photomultiplier tube.

– UM–96 and CA–12 Units –

The units described on the invoices as UM–96 and CA–12, when used together, perform the same work and operate in essentially the same way as the SA–40. However, the SA–40 has a built-in timer, which the other two units lack. In order to finish the analysis, the two units require a timing accessory.

1.

Plaintiffs' position is that merchandise "cannot be classified in a provision for 'parts' unless the parts under consideration are dedicated to use with the instrument described in the language preceding the so-called parts provision. The electrical sorter (and consequently all of the parts making up an electrical sorter) are not so dedicated, and should therefore be classifiable in Paragraph 353, as claimed." In essence, plaintiffs' contention is predicated upon the holding of our appellate court in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831 (1963).

We agree that the imported articles must be dedicated to use with scientific or laboratory instruments to be "parts" thereof. See also *J. J. Boll et al.* v. *United States*, 55 CCPA 86, C.A.D. 937 (1968). Consequently, we shall consider whether plaintiffs have successfully negated the Government's classification.

2.

From the Government's classification it is presumed that the articles, of which the present importations were parts, are scientific or laboratory instruments. Although there is nothing in the classification itself

that discloses which specific scientific or laboratory instrument the importation were parts, the record contains the following colloquy (R. 45–46):

> MR. LIDSTROM: I would be glad to concede that all the parts described on these entries are specially designed for the SA–40 * * *.
>
> MR. SOSNOV: I will accept that concession, and not ask any further questions.
>
> *    *    *    *    *    *    *
>
> JUDGE MALETZ: What is the stipulation, now?
>
> MR. LIDSTROM: * * * I am willing to concede that all of the parts described on the invoices, with the exception of the SA–40, and of course the UM–96 and [CA–] 12, which we said was a complete unit, all of the other merchandise is specially designed to go into the SA–40.
>
> MR. SOSNOV: So stipulated.

Since it is presumed from the classification that the articles of which the importations were parts are scientific or laboratory instruments, and since it appears from the stipulation of the parties that the importations (exclusive of the SA–40, UM–96 and CA–12) were dedicated to use with the SA–40,[2] it follows that plaintiffs had the burden of showing that the SA–40 was not a scientific or laboratory instrument.

A scientific instrument is one used in pure, as distinguished from applied, science. *W. L. Conover* v. *United States*, 17 CCPA 324, T.D. 43743 (1929); *J. E. Bernard & Co., Inc.* v. *United States*, 52 Cust. Ct. 20, C.D. 2428 (1964). A laboratory instrument is one used for laboratory purposes, viz., experiment or study. *J. J. Boll, supra; R. J. Saunders & Co., Inc.* v. *United States*, 45 CCPA 87, C.A.D. 678 (1958). The record fails to establish that the SA–40 is neither a scientific nor a laboratory instrument within the purview of paragraph 360. Therefore, we have concluded that the SA–40, and its parts are classifiable under paragraph 360 of the Tariff Act of 1930, as modified, as scientific or laboratory instruments and parts thereof.

The remaining merchandise, the UM–96 and CA–12, are two pieces which when used together perform the same functions as the SA–40, and according to the stipulation of the parties they form a "complete unit." From the Government's classification the presumption flows that the UM–96 and CA–12 are parts of scientific or laboratory instruments. The record fails to overcome such presumption.

---

[2] Plaintiffs' brief concedes that "[t]hose components used inside the SA–40 have no other use than in the SA–40, and are therefore dedicated to such article." However, respecting the articles used outside of the SA–40 (except the display unit), plaintiffs argue that "they are not dedicated to any article or instruments and not dedicated to a single use." Such contention appears to be contrary to the facts stipulated at the trial.

In accordance with the views expressed herein, the protests are overruled, and judgment will be entered accordingly.

DISSENTING IN PART

FORD, Judge:  I am in agreement with the result and reasoning in the majority opinion with respect to the merchandise involved herein except as to the SA–40 and internal and external parts.

The SA–40 and its internal and external parts were classified as "Parts of math, laboratory or scientific instruments, other." The actual statutory language involved reads as follows:

| Paragraph | Description of Products | Rates of Duty |
|---|---|---|
| 360 | Scientific and laboratory instruments, apparatus, utensils, and appliances (including surveying and mathematical instruments), and parts thereof, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for: | |
| * | *          *          *          * | *          * |
| | Other (except * * *) _____ | 22½% ad val. (22% on or after 7/1/63) |

The action of the collector in classifying the SA–40 as indicated, *supra*, carries with it the presumption that he found all facts necessary both as to "parts" and mathematical, scientific and laboratory instruments. *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966). The subsidiary facts presumed to have been found include the finding that the article of which the SA–40 was a part was chiefly used for mathematical, scientific or laboratory purposes. Plaintiff in the record as made herein has established to my satisfaction that the SA–40 is not a part but a complete unit. This is sufficient to overcome the first portion of the dual burden imposed upon the importer by the presumption of correctness. If the article is not a part and the collector was in error as to this fact, the presumption should not be extended to the point that it is presumed the collector found the SA–40 itself to be chiefly used for mathematical, scientific or laboratory purposes. Such a finding was never made nor contemplated by the classification. The facts presumed to have been found by the classification was that the SA–40 was a part of some article the collector had in mind which unknown article was chiefly used for mathematical, scientific or laboratory purposes. At no time was a finding ever made or considered that if the so-called part was not a part that the SA–40 itself was chiefly used for the purposes enumerated in the statute.

The second burden imposed upon the importer by the presumption of correctness is to establish the correct classification. In this instance the record amply establishes the SA–40 to have as an essential feature an electrical element or device. Accordingly, plaintiffs have made out a *prima facie* case with respect to the SA–40. I would, therefore, hold said unit to be properly subject to classification under the provisions of paragraph 353, *supra*, as claimed.

Insofar as the internal and external parts are concerned counsel for the respective parties have in effect stipulated that they were parts of the SA–40. Based upon this stipulation, I am of the opinion that the presumption of correctness attaching to the classification of said merchandise falls. These parts were classified under the same provisions as was the SA–40. The presumption is the collector found this merchandise was used as parts of an article chiefly used for mathematical, scientific or laboratory purposes. The stipulation confirms the fact that they are parts but parts of the SA–40. While it is true plaintiffs have not negated the use of the SA–40 in the fields enumerated, the presumption was overcome for the reasons set forth, *supra*. Defendant, on the other hand, offered no evidence with respect to the SA–40 to affirmatively establish chief use within the enumerated fields. Accordingly, insofar as the SA–40 is concerned, it is not an article chiefly used for mathematical, scientific or laboratory purposes.

It is a natural consequence of such a holding that if the merchandise involved, other than the UM–96 and CA–12, is in fact parts of the SA–40 and since paragraph 353, *supra*, contains a provision for parts of articles provided for in paragraph 353, *supra*, said parts are likewise subject to classification therein and I would so hold.